[Civ. No. 298. Fourth Appellate District.—March 11, 1931.]

LEO BACHMAN, etc., Respondent, v. INDEPENDENCE INDEMNITY COMPANY (a Corporation), Appellant.

Willis I. Morrison and Ray W. Hays for Appellant.

B. M. Benson and W. H. Stammer for Respondent.

Paul Nourse and Joe Crider, Jr., *Amici Curiae* on behalf of Appellant.

MARKS, Acting P. J.—This is an action to recover from an insurance carrier the amount of a judgment rendered against the insured in favor of a guest injured while riding in an automobile. Respondent recovered judgment from the insurance carrier by whom this appeal is prosecuted.

Katie Bachman was the owner of the automobile in question and the insured named in the policy of public liability indemnity insurance written by appellant to indemnify her against loss following accidental injury to others. On June 18, 1927, she desired to go from Fresno to San Francisco, and return, in her automobile. She invited Leo Bachman, the respondent; Joseph V. Steele, her nephew-in-law, and his wife, and Forest Bayliss to accompany her upon this trip. As she did not drive the car, Forest Bayliss was taken along to assist Leo Bachman in driving. Leo Bachman was the minor son of Katie Bachman, and Forest Bayliss was her son-in-law. Upon the return trip from San Francisco to Fresno, on June 19, 1927, Bayliss drove the automobile. Mrs. Bachman rode on the front seat by his side. Respondent and Steele occupied the back seat of the car. In going over the Pacheco Pass highway, Bayliss drove the car off the road and it rolled down a steep embankment. The accident resulted in the death of Katie Bachman and the injury of the other three passengers. The question of the liability of appellant for the death of Katie Bachman is considered in the opinion this day filed in case number 299, entitled *Bachman* v. *Independence Indemnity Co.* (Cal. App.) 297. Pac. 119. The liability of appellant for the

injury suffered by Joseph V. Steele is considered in the opinion this day filed in case number 297, entitled *Joseph V. Steele* v. *Independence Indemnity Co., ante,* p. 464 [297 Pac. 120].

On August 2, 1927, respondent commenced an action in the Superior Court of Fresno County against Forest Bayliss to recover damages suffered by him by reason of his injuries received in the accident. Upon this date Forest Bayliss was served with a copy of the summons and complaint in the office of B. M. Benson, who was the attorney then acting for respondent and who mailed copies of the summons and complaint to appellant at its San Francisco office and at its home office in Philadelphia, Pennsylvania. Both copies were received by appellant. For reasons which will hereinafter be set forth, appellant disclaimed responsibility to respondent under the terms of the policy and finally refused to file an answer in the action for or on behalf of Forest Bayliss. After this refusal, an amended complaint against Forest Bayliss was served upon him in November, 1927. No copy of this amended complaint was sent to appellant. He asked for $5,000 general damages and $75 special damages. On January 12, 1928, the default of Bayliss was entered and after a hearing and evidence taken, judgment was rendered in favor of respondent and against Forest Bayliss in the sum of $2,575. After the entry of judgment demand was made upon appellant for its payment, which was refused. Respondent then instituted this action against appellant to recover the amount of his judgment under the terms of the policy of indemnity liability insurance. Judgment was entered in his favor in the sum of $2,850.07, this being the amount of the judgment against Forest Bayliss, together with accrued interest.

The answer of appellant presented six separate defenses. A demurrer was sustained to the fifth and appellant did not amend. In its second defense it denied that the accident and subsequent injuries was caused by any negligence on the part of Bayliss, together with other matters of defense, which are so interwoven with those we must consider that it will not be necessary to detail them here. The fourth alleged a joint enterprise on the part of all of the occupants of the automobile.

■ The question of the negligence of Bayliss in the operation of the automobile at the time of the accident was determined by the judgment in the case of *Leo Bachman* v. *Forest Bayliss,* and, in the absence of fraud or collusion on the part of, or between, the parties to that action, it cannot be litigated here. (*Bryson* v. *International Indemnity Co.,* 88 Cal. App. 100 [262 Pac. 790]; *Kruger* v. *California Highway Indemnity Exchange,* 201 Cal. 672 [258 Pac. 602, 604]; 31 Cor. Jur. 461.) In the Kruger case the Supreme Court announced the following rule:

" 'The general rule appears to be that judgments are conclusive and binding upon parties and their privies, but as to all others they are neither *prima facie* nor conclusively binding, for the reason that it would be unjust to bind a person by any proceeding in which he had no opportunity to make a defense, or offering evidence, of cross-examining witnesses, or of appealing if he were dissatisfied with the judgment. Indemnity contracts against loss or liability are sometimes said to constitute an exception to this rule, while again it is said that they do not in fact constitute an exception at all, but are based upon a fair and reasonable interpretation of the contract. It seems to be generally conceded, however, that wherever a surety has contracted with reference to one of the parties in some suit or proceeding in the courts he is concluded by the judgment.' "

■ On the question of a joint enterprise the trial court found against the contention of appellant. This finding is amply supported by the evidence, which is conclusive upon this court.

Four interesting questions are presented by appellant's answer which we must consider. They are new in California jurisprudence. Appellant maintains there are four reasons why it was released from its obligations under its policy of indemnity insurance. First, because of the failure of Forest Bayliss to notify appellant of the accident and to transmit to it the summons and pleadings served upon him. Under the terms of the policy, Forest Bayliss, who was the driver of the car at the time of the accident, became the insured as he was operating the car with the permission and at the request of Mrs. Bachman, the named insured. Second, because of the failure of Forest Bayliss to co-operate with appellant in the defense of the action against him.

Third, because of alleged collusion between Leo Bachman and Henry Bachman, his guardian *ad litem,* and Forest Bayliss, which resulted in the judgment against the latter. Fourth, because of a fraudulent agreement between the same parties to fasten an unjust liability upon appellant.

It is admitted that Forest Bayliss failed to give appellant written notice of the accident as required in the policy of insurance. He did not send to it copies of the summons and complaint served upon him on August 2, 1927. These were transmitted to appellant by the attorney for respondent. In the case of *Royal Indemnity Co.* v. *Morris,* 37 Fed. (2d) 90, 92, this was held to be sufficient notice. The amended complaint was served more than two months after appellant had disclaimed its liability under its policy of insurance and had refused to proceed with Bayliss' defense in the action although requested so to do by him. It is evident from the record that the transmission of this amended complaint to appellant would not have changed its attitude upon its obligation to defend the action or to pay the judgment. It then maintained, and still maintains, that it was released from this obligation. The sending of this amended complaint to appellant would have been a useless act which the law does not require of a party to an action. Appellant cannot predicate its defense upon the failure to transmit to it a copy of this amended complaint as this was excused and as it was not injured by this omission. In fact, counsel for appellant do not stress this question upon appeal.

Appellant lays great stress upon the failure of Forest Bayliss to co-operate with it in a defense of the action against him. The policy of indemnity insurance which furnishes the basis of this action contains the following provisions pertinent hereto:

"Policy No. LA 76925　　　　　　Insured Katie Bachman
　"Premium　$15.00　Expiry　date　May　24th　1928.

"Schedule of Statements

"Statement No. ⸺.

"11. The Company's liability for damage in respect of any one accident or disaster involving bodily injury shall not exceed Ten Thousand Dollars ($10,000), subject to a

limit of Five Thousand Dollars ($5,000.) for any one person.

———oOo———

"Automobile Liability Policy * * (Personal Injuries Only)
"INDEPENDENCE INDEMNITY Co.
"Home Office: Philadelphia

"CHARLES H. HOLLAND, President
"Policy No. LA 76925.

"In consideration of the premium specified in, and the Statements contained in, the Schedule endorsed hereon, made part hereof, and warranted by the Insured to be true, the Independence Indemnity Company (hereinafter called 'the Company') hereby agrees with the Insured named in Statement 1, that if, during the term of this Policy, any automobile described in Statement 4, by reason of its ownership, maintenance or use at any location within the United States of America and Canada, shall cause bodily injuries by accident, whether resulting fatally or otherwise, to any person or persons, and for which bodily injuries the Insured and/or others as hereinafter provided are liable for damages, then the Company will insure against loss arising out of such liability, subject to the limits set forth in Statement 11, the named Insured, and/or any person or persons while riding in or legally operating any of the automobiles described in the Schedule of Statements, and/or any person, firm or corporation legally responsible for the operation thereof, provided such riding, use or operation is with the permission of the named Insured; or, if the named Insured is an individual, with the permission of an adult member (other than a chauffeur or domestic servant) of his household.

"And will in addition, in the name and on behalf of the named Insured and/or any person, firm or corporation as above defined,

"1. Defend all claims or suits for damages for such injuries for which damages they are, or are alleged to be, liable.

"2. (a) Pay all costs and expenses incurred with the Company's written consent.

"(b) Pay all taxed costs. (c) Pay all interest accruing upon any judgment.

"3. Repay the expense incurred in providing such immediate surgical relief as is imperative at the time of the accident.

"Providing always that the Insurance hereby made is and shall be subject to the Conditions hereinafter set forth and to the memoranda, if any, endorsed hereon in like manner as if the same were respectively repeated and incorporated herein, and compliance with such Conditions and memoranda, and each of them, shall be a condition precedent to the right of recovery hereunder.

"Conditions

"3. Upon the occurrence of any accident covered by this Policy, the Insured shall give immediate written notice thereof to the Company at its Home Office, and forward to the Company forthwith after receipt thereof every process, pleading and paper of any kind relating to any and all claims, suits and proceedings.

"7. In the event of bankruptcy or insolvency of the named Insured the Company shall not, as respects said Insured, be relieved thereby of the payment of any indemnities provided herein, except that the amount of the damage shall first be fixed by judgment against the said Insured."

This policy is the contract between appellant and Forest Bayliss under the terms of which, together with the provisions of law, the rights, duties and obligations of the parties must be determined. Its terms place no obligation upon Forest Bayliss to co-operate with appellant in the defense of an action. In this respect it differs from the contracts of insurance which furnish the basis for the many decisions from other jurisdictions cited by appellant and relied upon by it to sustain its contention that a failure of the insured to co-operate with the insurer in the defense of an action releases the insurer from liability under its policy. In practically all of the cases cited by appellant the duty of the insured to co-operate with the insurer was made a condition in the policy and of the right of recovery. This condition being omitted from the policy in the instant case, the cases cited furnish no authority for a similar holding here. We conclude that as the contract placed no duty upon Forest Bayliss to co-operate with appellant in the defense of the suit against him that this failure to co-operate

of itself and standing alone, cannot furnish a defense in the instant action. It must, however, be considered in connection with the defenses of collusion and fraud, as, the failure to co-operate in connection with other facts might be considered as evidence of either collusion or fraud or both.

The defenses of collusion and of fraud are so interwoven and so closely connected in the evidence and arguments that we will consider them together.

It appears that none of the parties to the action against appellant, nor the children of Katie Bachman, knew of the existence of the insurance policy until after her death. Henry Bachman was appointed the administrator of her estate. When her safe deposit box was opened the policy was discovered. It does not appear just when this happened, but the evidence would justify the conclusion that it was some time between the first and the twenty-ninth days of July, 1927. After its discovery the policy was taken to B. M. Benson, Esq., who was acting as the attorney for the administrator in the probate proceedings. He thereupon started to investigate the accident and questioned all of the survivors of the wreck. He advised the administrator, Leo Bachman, and Joseph V. Steele that they had causes of action against the insurance carrier, but that they would first have to sue Forest Bayliss, the driver of the car. They thereupon authorized him to proceed with the litigation and he prepared the complaints which were subsequently filed, served on Forest Bayliss, and mailed to appellant on the second day of August, 1927. Appellant thereupon sent an adjuster to Fresno to investigate the accident. Ray W. Hays, Esq., had been the local attorney for appellant for a number of years. He was absent from Fresno, but a copy of the summons and complaint was left in his office for his attention upon his return. Frederick W. Docker, Esq., was caring for Mr. Hays' legal business during his absence. The adjuster prepared a written statement of the circumstances of the accident, but Bayliss refused to sign it, giving as his reasons that Mr. Benson had told him to sign nothing. This statement did not contain a detailed account of the circumstances of the accident. It contained assertions, which were in the form of conclusions and opinions, that Bayliss did not consider himself careless

or negligent in his operation of the automobile nor that he considered that anyone had a just ground for any claim against him on account of the accident. Except for these legal conclusions and opinions, the circumstances of the accident there set forth did not necessarily differ from those contained in other statements made by Bayliss in which his negligence clearly appears. The evidence concerning the conversation leading up to Bayliss' refusal to sign this first statement is not entirely clear. Mr. Docker testified that he asked Bayliss if the statement correctly set forth the *facts* of the accident, to which Bayliss replied that it did. The *facts* contained in the statement do not necessarily refer to nor include statements of legal conclusions or opinions. Further, the trial court found that Bayliss was negligent in the operation of the automobile, which finding is supported by the great weight of the evidence.

Mr. Hays returned to Fresno about the middle of August and interviewed Bayliss at his office. A few days later, after being sworn by a notary public, Bayliss gave a statement of the circumstances of the accident to Mr. Hays, which was taken down in shorthand. He refused to sign this statement, giving the same reason as before. On August 27, 1927, he was again called to the office of Mr. Hays and there presented with answers to the three complaints filed against him. He read over the answers and refused to sign them, telling Mr. Hays that Mr. Benson had advised him to sign nothing. In an extended conversation with Mr. Hays, Bayliss stated that he was friendly with the plaintiffs in the three actions and thought they should recover for their losses and that he would like to have them do so if he could do it squarely. He asserted that his negligent operation of the automobile was the sole cause of the accident. Upon his final refusal to verify the answers, Mr. Hays informed Bayliss that appellant disclaimed liability under its insurance policy because of his refusal to verify the answers presented, or any other answers, and his refusal to co-operate in the defense of the actions, and his apparent desire to co-operate with the plaintiffs in their securing judgments against him. Mr. Hays gave him a letter, which was probably a further disclaimer of liability; but which does not appear in the record, and also called Mr. Benson over the telephone, informing him that Bayliss

had refused to verify the answers. Under date of August 31, 1927, appellant wrote Bayliss a letter disclaiming responsibility and liability under the insurance policy for the reasons hereinbefore set forth. Shortly thereafter Mr. Benson got into communication with Bayliss and explained to him that he had not told him not to sign any answers, but merely not to sign any statements prepared by the agents or representatives of appellant, and that it was necessary for Bayliss to sign answers to the complaints filed against him. This conference resulted in Mr. Benson preparing a letter addressed to Mr. Hays which Bayliss signed and mailed. This letter was dated September 8, 1927, and informed Mr. Hays in part as follows:

"I have your letter of August 31, 1927, in regard to the three suits brought against me by Leo Bachman, Joseph V. Steele, & Henry Bachman, and note what you say with reference to your denying any liability. You are mistaken in regard to my attitude in this matter. I have not refused to verify any answer which denies negligence on my part, for the simple reason that the accident was caused solely by my negligence and carelessness. I have always been willing and still am willing, and I hereby offer to verify any answer which truthfully sets forth the facts in these cases, and I demand that you prepare such answers for signature and verification.

"No default has been entered in any of these cases and unless you undertake my defense immediately, I shall employ other attorneys and later I expect reimbursement for any sum I am compelled to expend for attorney fees.

"Your attitude throughout the matter has been that you should tell me the facts in these cases instead of accepting the facts from me."

This letter did not change the attitude of appellant. It stood upon its former disclaimer of liability and refusal to represent Bayliss in the litigation. Judgments in the three actions were rendered on January 12, 1928. On that day Mr. Benson informed Mr. Hays that the judgments had been rendered but that if Mr. Hays thought appellant had any defenses to the actions he would set aside the judgments to permit such defenses to be made. Mr. Hays replied that Mr. Benson "had closed the gates behind him" or "had burned his bridges behind him". Under date of

June 7, 1928, Mr. Benson wrote Mr. Hays in part as follows:

"In view of the apparent misunderstanding of Mr. Bayliss' refusal to verify the answer in the original cases we are considering the advisability of having all of the judgments set aside and the cases dismissed and then filing same over again, and in case this course is pursued, Mr. Bayliss would then verify *any* answer which you might prepare. Please take this up with the company at once and request an early answer, and when you have received same, please advise me."

As this letter produced no results, demand was made upon appellant to pay the judgments, and upon its refusal so to do, the three suits were instituted to collect them.

Had the court found that there was fraud and collusion between Bayliss and the plaintiffs which resulted in the judgments against Bayliss, we have concluded that there is ample evidence in the record to have supported such a finding. However, the court found that there was no such collusion or fraud. Appellant seriously questions these findings as contrary to and not supported by the evidence. In addition to the testimony produced by appellant which we have detailed, it introduced evidence showing that Henry Bachman and Steele regarded the bringing of the actions against Bayliss as a joke. They explained that they really did consider it a joke for the reason that Bayliss was without property or assets and earning $17 per week, out of which he was trying to support himself, his wife and child; that his wages were insufficient for this purpose and that he had to borrow from his relatives in order to pay his living expenses. They also testified that they did not expect to collect judgments from Bayliss. They explained this statement by saying that this belief was founded upon Bayliss' impecunious condition. We believe that the foregoing fairly summarizes the evidence presented by appellant upon which it relies to establish collusion between, and fraud on the part of Bayliss and the plaintiffs in the actions against him.

In view of the findings of the court against the existence of fraud and collusion, we must determine whether or not there is any evidence in the record, or reasonable inferences to be drawn from such evidence, supporting these

findings. This evidence is found principally in the testimony of Mr. Benson. He admits conferring with Bayliss several times and telling him not to sign the statements prepared by the representatives of appellant. He explains this action on his part by saying that it is a well-known fact that adjusters for indemnity companies in obtaining these statements often color them in favor of the company and secure the signature of an unwary witness to a writing that does not exactly present the true facts. He was positive in his testimony that he did not tell Bayliss not to sign any answers to the complaints and did not know that Bayliss had refused to sign or verify the answers until informed of this fact by Mr. Hays over the telephone. He immediately got into communication with Mr. Bayliss and corrected his mistaken idea about the answers and had him sign and mail the letter of September 8, 1927. He further testified that at no time did he advise Bayliss in the litigation or instruct him to do anything in connection therewith except to tell the representatives and attorneys for appellant the truth about all of the circumstances of the accident and not to sign any written statements prepared by them. Of course the impropriety of the attorneys for the plaintiff giving any advice or instructions to the defendant in an action is immediately apparent and needs no further comment. (*Anderson* v. *Eaton,* 211 Cal. 113 [293 Pac. 788]; *Elberta Oil Co.* v. *Superior Court,* 108 Cal. App. 344 [291 Pac. 668].)

The answers to the actions filed against Bayliss which were prepared and presented to him for verification are not in the record. It appears from the undisputed evidence, however, that these answers denied negligence on the part of Bayliss and that when Bayliss refused to sign them he maintained that he was guilty of the accident, or in other words, that his negligence caused it. While this did not excuse him from signing any answer which might truly set forth a legitimate defense, it did excuse him from signing the answers presented to him. As was said in the case of *Royal Indemnity Co.* v. *Morris, supra:*

"It may be added that the duty of the insured in respect of permitting a defense in his name is not susceptible to precise general definition. He is not to be a mere puppet in the hands of the insurer; he is under no obligation to

permit a sham defense to be set up in his name, nor can he be expected to verify an answer which he does not believe to be true; he cannot evade personal responsibility, and hence he is not bound to yield to any demand which would entail violation of any law or ethical principle; but he cannot arbitrarily or unreasonably decline to assist in making any fair and legitimate defense.''

As soon as Bayliss was informed of his duty to sign any answers prepared for him which set forth the true facts of the case, he informed appellant of his willingness to verify such pleadings. This information was conveyed to appellant more than four months before Bayliss' default was entered and judgment taken against him. This gave appellant ample time to interpose any legitimate defense that might be urged in the pending actions. While Bayliss was not justified in the position which he first assumed, we think it is equally apparent from the evidence that appellant was extremely prompt in attempting to avail itself of a technical defense and thereby to escape liability for an injury which the record clearly indicates was caused by the negligence of its insured.

We have examined the record and the undisputed evidence shows that Leo Bachman was quite seriously injured in the accident, one of his wrists was broken and the other quite badly sprained. He was severely bruised, and his face and forehead were badly cut. He was confined to a hospital for about two weeks. We are of the opinion that the judgment rendered in his favor was not excessive. He was asleep on the rear seat of the automobile at the time of the accident and if there was any legitimate defense to be urged in his suit against Bayliss except as to the amount of his recovery, it does not appear from the record. If there was any such defense to be urged, appellant had ample time in the four months which elapsed between September 8, 1927, and January 12, 1928, in which to prepare an answer setting it forth and to serve and file the same.

Analyzing the evidence, and the arguments of appellant, we find that its grounds for maintaining that the policy was voided because of collusion between Bayliss and the three plaintiffs in the damage actions, and of a fraudulent agreement between them to fasten an unjust liability upon appellant, are as follows: (1) The family relationship be-

tween them, which is admitted. (2) The fact that the plaintiffs regarded their actions against Bayliss as jokes, which was explained upon the grounds we have indicated. The trial court accepted this explanation as true. There is a reasonable inference from the evidence supporting this theory. (3) That there was an agreement between the parties not to enforce the judgments against Bayliss. The plaintiffs testified that they did not expect to collect the judgments because his impecunious condition made him judgment and execution proof. Bayliss testified he did not expect to pay the judgments because he could not do so. They all denied that there was any agreement to release Bayliss from paying the judgments. The court's findings against the existence of any such agreement is supported by the evidence. (4) The refusal of Bayliss, at the request of the attorney for the plaintiffs, to sign written statements of the circumstances of the accident prepared by the representatives of appellant. It is admitted by respondent that this was done. This attorney told Bayliss to tell the true facts of the accident but not to sign statements. Bayliss apparently made several frank and truthful statements of the circumstances of the accident to the attorney for appellant. We know no rule of law, and there is nothing in the policy, requiring him to sign or swear to such statements. The court's finding in favor of respondent on this issue that this action on the part of Bayliss and the attorney was taken in good faith and without any collusive or fraudulent intent is supported by a reasonable inference from the evidence. (5) That Bayliss refused to co-operate with appellant in the defense of the actions against him. The contract of insurance placed no obligation upon him so to do and this lack of co-operation can only be considered as a circumstance tending to indicate collusion or fraud or both. (6) That Bayliss refused to sign and verify the answers presented to him. These answers presented defenses not in accordance with the circumstances of the accident as claimed by him to be the true facts, and excused him from signing and verifying the answers presented to him. (7) That Bayliss refused to sign or verify any answers in the actions against him under the advice of the counsel for the plaintiffs. According to Bayliss' testimony, and his statements to the attorneys for

appellant, they undoubtedly believed this to be true. The attorney for the plaintiffs testified that he had given no such advice to Bayliss and did not know that any answers had been prepared or presented to him nor that he had refused to sign them until after such refusal when he was told of this fact by one of the attorneys for appellant. He thereupon communicated with Bayliss and informed him that no such advice had been given and that he would have to sign and verify any answers, the allegations of which conformed to the truth. Bayliss wrote appellant's attorney and informed him that he was ready and willing to sign and verify such answers. Two or more people must collude together. Collusion cannot be on the part of one alone. Nor can a fraudulent agreement to fasten an unjust liability on another be made by one person. The testimony of Mr. Benson and his clients denied collusion on their part. The court found against this contention of appellant and there is evidence in the record to support this finding. (8) That on account of his relationship to and friendship for the plaintiffs Bayliss desired them to recover judgments against him. Bayliss admitted this but qualified it with the statement that he wanted them to recover if he could ''do it squarely''. This desire on his part might have been a natural one prompted by the honest belief that he was negligent and solely responsible for the accident. The evidence points strongly to his negligence. In fact, after reading the record, no other conclusion should be reached. The court accepted and believed this explanation and under the evidence it could do so. (9) From the foregoing facts and combination of circumstances, appellant concludes that there is satisfactory evidence demonstrating collusion between the plaintiffs and their attorney on the one side and Bayliss on the other, and a fraudulent agreement between these persons to fasten an unjust liability on appellant. The court found against this contention and that the parties to the action and the attorney had acted in good faith and without collusion or fraud. This finding is supported by evidence and by reasonable inferences from the evidence.

Appellant and its attorneys undoubtedly believed that collusion and fraud actually existed between Bayliss and the parties suing him at the time of the disclaimer of lia-

bility under the policy and the refusal to proceed with the defense of the actions. If such collusion or fraud had existed they would have been justified in the action they took. Judgments tainted by fraud or collusion should not be permitted to furnish the basis of the actions on the insurance policy. This defense, if established, should prevail, but like any other defense, if not established in the trial court, must fail. The trial court found against appellant on this issue, and the finding finds sufficient support in the evidence to become final in this court.

Appellant confidently urges that under the decisions in the cases of *Metropolitan Casualty Ins. Co.* v. *Colthurst,* 36 Fed. (2d) 559, *Royal Indemnity Co.* v. *Morris, supra, Coleman* v. *New Amsterdam Casualty Co.,* 247 N. Y. 271 [160 N. E. 367], and *Rushing* v. *Commercial Casualty Ins. Co.,* 251 N. Y. 302 [167 N. E. 450], the judgment must be reversed.

The two federal cases were decided by the United States Circuit Court of Appeals, Ninth Circuit, upon causes of action arising in California. In both the court construed a statute of this state relating to actions against insurance carriers, approved May 21, 1919 (Stats. 1919, p. 776), which we will hereafter quote at length. United States courts have always conceded to state courts the right to construe and interpret the statutes of their state where federal constitutional or statutory provisions were not involved. We have concluded that the construction placed on this statute by the Circuit Court of Appeals does not conform to that of the courts of California. The cases are also distinguishable in point of fact from the instant case. In the Colthurst case the policy required the insured to forward to the company the summons and other process as soon as it was served on him. The company had no notice of the service of process in the action in which the judgment was rendered against the insured until three days after its rendition, which fact furnishes the basis of the decision. In the Morris case the insurance policy contained the provision that the "insured shall in no manner aid or abet the claimant, but shall cooperate fully with the company, the Royal Indemnity Company, in defense of such claim or suit", which proviso is wholly lacking from the policy in the case

at bar. A violation of this co-operation clause is relied upon by the Circuit Court for the conclusion it reached.

The cases cited from New York are also easily distinguishable from the case we are considering, for two reasons; first, because the duty-to-cooperate clause appeared in both of the policies; and, second, because of the material difference between the New York and California statutes permitting actions to be filed against the insurance carrier by an injured person.

The California statute (Stats. 1919, p. 776) is as follows:

"Section 1. No policy of insurance against loss or damage resulting from accident to, or injury suffered by another person and for which the person insured is liable, other than a policy of insurance under the Workmen's Compensation, Insurance and Safety Act of 1917, or any subsequent act on the same subject, or against loss or damage to property caused by horses or other draught animals or any vehicle, and for which loss or damage the person insured is liable, shall be issued or delivered to any person in this State by any domestic or foreign insurance company, authorized to do business in this State, unless there shall be contained within such policy a provision that the insolvency or bankruptcy of the person insured shall not release the insurance carrier from the payment of damages for injury sustained or loss occasioned during the life of such policy, *and stating that in case judgment shall be secured against the insured in an action brought by the injured person or his heirs or personal representatives, in case death resulted from the accident, then an action may be brought against the company, on the policy and subject to its terms and limitations, by such injured person, his heirs or personal representatives, as the case may be, to recover on said judgment. Upon any proceeding supplementary to execution, the judgment debtor may be required to exhibit any policy carried by him insuring against the loss or damage for which judgment shall have been obtained.*"

The portion which we have italicized does not appear in the New York statute (N. Y. Laws of 1917, chap. 524), but otherwise the two are substantially the same. The Supreme Court calls attention to another important difference in the statutory law of the two states in the case of *Malmgren* v.

*Southwestern Automobile Ins. Co.,* 201 Cal. 29 [255 Pac. 512, 513].

In the jurisdictions which do not recognize the right of an injured person to bring an action on the insurance policy to collect the amount of a judgment rendered against the insured for damages suffered at his hands, the policy is regarded and treated as a private contract of indemnity between the insurer and insured in which no other person may become interested. In the jurisdictions recognizing such a right of action the policy is regarded as a contract between the insurer and the insured for their benefit and for the benefit of an unknown third person who becomes known and identified upon being injured by the insured. The language of our statute authorizing the injured person to file suit against the insurance carrier, after recovery of a judgment against the insured, would indicate that the legislature intended to adopt the latter rule in California. It would seem a strange and useless proceeding on the part of the legislature to give to the injured the right to sue the insurer if a recovery in such an action could be defeated by the insurance company and the insured without the knowledge or consent of or any act on the part of the injured person. That the Supreme Court took this view is indicated by the language used in the case of *Malmgren* v. *Southwestern Automobile Ins. Co., supra,* as follows:

"It is appellant's contention that no contractual relation is alleged or shown to exist between the injured party and the appellant. The provisions of the statute, as above quoted, are, as a proposition of law, a part of every policy of indemnity issued by a company or corporation engaged in transacting the kind of indemnity insurance business which appellant was authorized by the law of the state to transact. It was a contractual relation created by statute which inured to the benefit of any and every person who might be negligently injured by the assured as completely as if such injured person had been specifically named in the policy. . . .

"It is contended by appellant that its liability could not accrue under the provisions of the policy until an execution issued upon the judgment obtained against the assured, or judgment debtor, was returned unsatisfied by reason of the insolvency or bankruptcy of said insured. The statute of

this state, which is the final word on this issue, does not make the return of the execution unsatisfied a prerequisite to the commencement of an action upon the policy. The statute of the State of New York has such a provision and appellant had caused to be incorporated in its policy the language of the New York statute *verbatim*. The substantive law of this state cannot be enlarged, circumvented, defeated or modified by any provision which the insurer may have elected to place in its contract in derogation of or in conflict therewith. The statute is founded upon principles of public policy, and an anomalous situation would be created if the rights of third parties, for whose protection the law was adopted, could be hindered, delayed or defeated by the private agreements of two of the parties to a tri-party contract. If appellant's contention be sound, then it could, with equal justification, require the question of the assured's bankruptcy to be adjudicated by a competent tribunal before it would be obliged to recognize his insolvency or bankruptcy, or impose other conditions precedent to the injured person's right of action in derogation of express provisions of the law's mandate. We see no merit in the contention. *Schoenfeld* v. *New Jersey Fidelity & Plate Glass Ins. Co.*, 203 App. Div. 796 [197 N. Y. Supp. 606], relied upon as authority in the instant case, is merely declaratory of the New York statute, which provides that a cause of action does not accrue to the injured person *until an execution issued upon the judgment against the assured has been returned unsatisfied by reason of insolvency or bankruptcy*. No such language or language equivalent thereto is found in the statute of this state, and neither appellant nor this court is given authority to interpolate the provision of the New York law into a California statute. The clause in the statute which provides that an 'action may be brought against the company, on the policy and subject to its terms and limitations, by such injured person,' was not intended to defeat its purpose upon the theory that an action brought 'on the policy' binds the injured person to a repudiation or waiver of the benefits of the statute expressly adopted for his protection, but it clearly has reference to those matters concerning which the insurer and assured could legally contract."

The following cases support the conclusions which we have reached concerning the construction to be placed on this statute: *Marple* v. *American Automobile Ins. Co.*, 82 Cal. App. 137 [255 Pac. 260], *Pigg* v. *International Indemnity Co.*, 86 Cal. App. 671 [261 Pac. 486], *Bryson* v. *International Indemnity Co.*, 88 Cal. App. 100 [262 Pac. 790], and *Langley* v. *Zurich Gen. Acc. & L. Ins. Co.*, 97 Cal. App. 434 [275 Pac. 963].

 We are of the opinion that after the happening of an accident coming within the coverage provisions of a policy of insurance, such as we are considering, neither the insurer nor the insured can, by any voluntary act, defeat the statutory right given to the injured person to bring an action on the policy after judgment recovered against the insured without some act or omission on the part of the insured which will relieve the insurer from liability. Of course, collusion or fraud between the insured and the injured to the damage of the insurer, when proven in a proper action, would furnish grounds for the release of the insurer. To adopt any other rule would permit the insurer and insured to revoke or cancel the policy or release the insurer's liability at will after the accident and thus defeat the purpose of the statute, giving the one injured a cause of action against the insurer to enforce his judgment. This was attempted in the case of *Finkelberg* v. *Continental Casualty Co.*, 126 Wash. 543 [219 Pac. 12]. An examination of this case discloses that the Continental Casualty Company issued its policy of indemnity insurance to Tanaka. On November 2, 1920, and while the policy was in full force and effect, Finkelberg was injured through the operation of an automobile by Tanaka. On July 7, 1921, Finkelberg recovered judgment against Tanaka for his injuries. Upon his failure to collect this judgment he brought suit against the insurer, which defended the action by alleging a release of liability under the policy for a consideration and by agreement with the insured. It appears that on April 11, 1921, before the judgment against Tanaka, and before the service of summons upon him, the insurer paid him $850 for this release. The Supreme Court of Washington refused to recognize this release and held that the right, which finally ripened into a cause of action by Finkelberg against the insurer, accrued at the time of the

accident and injury on November 2, 1920. (See, also, *Metropolitan Casualty Ins. Co.* v. *Albritton*, 214 Ky. 16 [282 S. W. 187].)

Judgment affirmed.

Jennings, J., and Lamberson, J., *pro tem.*, concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on April 8, 1931, and the following opinion then rendered thereon:

MARKS, Acting P. J.—*Amici curiae* have appeared in this action in support of the petition for a rehearing and urge that the opinion of this court might be construed as laying down a general rule to the effect that where a policy of indemnity insurance provides that the insured give the insurer immediate notice of an accident and also send to it copies of any summons and complaint served upon him, the immediate notice of the accident may be dispensed with and that the sending to the insurer of the summons and complaint served on the insured would be a sufficient notice in all cases, contrary to the rule laid down in the case of *Aronson* v. *Frankfort etc. Ins. Co.*, 9 Cal. App. 473 [99 Pac. 537]. No such attempt was made in this opinion to establish any such general rule. An opinion of an appellate court should be read and construed in the light of the facts of the case before it.

The Aronson case holds that the insurer was entitled to notice of the accident immediately or within a reasonable time after its occurrence. What is a reasonable time within which an act may be performed depends upon the facts of a case. In the instant case the named insured was killed, and her driver, Forest Bayliss, who became the insured under the terms of the policy, was injured in the accident. No living person, except the insurer and its agents, knew of the existence of the policy until after the opening of Katie Bachman's safe deposit box some time after her death. The action against Bayliss was filed shortly thereafter, the exact time intervening between the discovery of the policy and the institution of the suit not appearing in the record. Notice was immediately given the insurer of the filing of the suit by sending to it the copy of the sum-

mons and complaint, and it commenced its investigation of the accident without raising the question of the failure to give any prior or additional notice. The record fails to disclose that appellant's disclaimer of liability was based in whole or in part on the failure to give any other notice of the accident than that contained in the summons and complaint.

Under these circumstances we have concluded that the notice of the accident was given within a reasonable time and that appellant waived the right to receive any other or further notice than the one given it. (*J. Frank & Co.* v. *New Amsterdam Casualty Co.*, 175 Cal. 293 [165 Pac. 927]; *Employers' Liability Assur. Corp.* v. *Chicago etc. Coke Co.*, 141 Fed. 962 [73 C. C. A. 278]; *Rosenbloom* v. *Maryland Casualty Co.*, 153 App. Div. 23 [137 N. Y. Supp. 1064]; *Tozer* v. *Ocean etc. Corp.*, 94 Minn. 478 [103 N. W. 509].)

The petition for rehearing is denied.

Jennings, J., and Lamberson, J., *pro tem.*, concurred.

A petition by respondent to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on May 4, 1931.