OCEAN ACCIDENT & GUARANTEE CORPORATION, Limited, v. TORRES.

No. 8338.

Circuit Court of Appeals, Ninth Circuit.

July 6, 1937.

Rehearing Denied Aug. 30, 1937.

Jewel Alexander, W. C. Bacon, Redman, Alexander & Bacon, and Herbert Chamberlin, all of San Francisco, Cal., for appellant.

Thornton Wilson, of Oakland, Cal., for appellee.

Before WILBUR and GARRECHT, Circuit Judges, and NETERER, District Judge.

GARRECHT, Circuit Judge.

In her amended complaint in the court below appellee alleged that she was injured on February 19, 1934, through the negligent operation of an automobile by Irma C. Brinkman; that on May 6, 1935, after a trial on the merits in the superior court of Alameda county, Cal., the appellee recovered a judgment in the principal sum of $5,000, together with taxed costs of $17, against Irma C. Brinkman and her husband, E. M. Brinkman; that the judgment remained wholly unsatisfied and unpaid; that the appellant herein was obligated to pay the amount of the judgment under a policy of automobile insurance that it had issued and delivered on March 31, 1933, to Libby, McNeill & Libby, "and/or for account of whom it may concern"; that under the terms of that policy the appellant was liable to the appellee in the sum of $5,017, together with interest and costs incurred in the court below. Brinkman was in the sales department of Libby, McNeill & Libby.

The appellant's answer admitted the issuance and delivery of the policy, but denied liability thereunder. It denied the allegations of the complaint regarding negligence, injuries, damages, and the merits of the trial in the state court. Special defenses set up in the answer consisted of reliance on (a) a provision of the policy exempting the insurer from liability for any injuries to an employee of "the Assured while engaged in the operation, maintenance or repair of any disclosed motor vehicle or injured in the course of employment in the business of the Assured"; (b) a provision of the policy exempting the insurer from liability for injuries "to any person to whom the Assured may be held liable under any Workmen's Compensation Law"; and (c) a provision of the policy that it is claimed exempted the insurer from liability unless execution on a judgment had been returned unsatisfied because of insolvency or bankruptcy.

Succinctly stated, the facts are as follows:

The appellee was a housemaid in the employ of Mrs. Brinkman. On the day of the accident, which occurred four or five miles from the Brinkman residence, the appellee was assisting Mrs. Brinkman to return some washtubs to the latter's daughter. According to the appellee's testimony, Mrs. Brinkman and the appellee drove to the daughter's home together. At Mrs. Brinkman's request, the appellee, who had gotten out of the machine, returned to the car and stood on the running board. The car started with a jerk, and the appellee was thrown off. In a report made to the insurer after the accident, Mrs. Brinkman stated that just as the automobile started, the appellee stepped on the running board, and, after talking with Mrs. Brinkman as the automobile continued on its way, the appellee suddenly fell or slipped from the running board, striking her head on the car and then on the curbing.

About a year later, the appellee brought action against the Brinkmans in the state court for $5,000 damages for the injuries thus received. She had resided with the Brinkmans for ten years and, save for a trip to Portland, Ore., continued to do so after filing her suit and at the time of the trial.

During the trial of that case in the state court, counsel for the Brinkmans stipulated that Mrs. Brinkman had been negligent, and that "the negligence proximately caused the disability, limiting the question in issue here to that of the nature and extent of the disability."

At the trial of the case at bar in the court below, the policy issued and delivered by the appellant was introduced into evidence. It appeared therefrom that Libby, McNeill & Libby, the "name assured," was a corporation domiciled in Illinois, and that the policy had been issued and delivered by the appellant's authorized agent, who likewise was a resident of that state.

No evidence was introduced at the trial showing that execution had been levied on the state judgment and returned unsatisfied, or that the Brinkmans were bankrupt or insolvent. The appellee's counsel stipulated that execution had not been levied, and that the Brinkmans were neither bankrupt nor insolvent.

At the close of all the evidence, the appellant moved for a directed verdict on grounds included within the special defenses already referred to. The court's denial of that motion is assigned as error.

The appellant alleges error also in the court's instructions that the return of an unsatisfied execution on the judgment against the Brinkmans was unnecessary to the maintenance of the appellee's action

and that the bankruptcy or insolvency of the Brinkmans was immaterial; and that the state judgment against the Brinkmans was binding and conclusive against the appellant. It is also complained that the court refused to instruct the jury that the appellant was not liable for injuries suffered by any employee of the assured in the course of employment in the business of the assured.

The grounds upon which the appellant bases its contention that the court erred in denying the motion for a directed verdict constitute the gist of the appellant's case, since the attacks upon the court's instructions are all corollary thereto. Accordingly, we will consider the various arguments against the sufficiency of the evidence, in the order in which those arguments are presented by the appellant.

First, it is urged that the appellee did not prove that the Brinkmans were bankrupt or insolvent, or that execution on the judgment against them had been returned unsatisfied. To determine whether or not such a showing was necessary, we must first inquire whether the law of California is controlling.

The Brinkmans were residents of California when they became insured under the appellant's motor vehicle policy. The policy was countersigned at San Francisco by an authorized agent of the appellant, "to comply with the law of the State of California." The policy itself provides that: "Any specific statutory provision in force in the state in which it is claimed that the Assured is liable for any such loss as is covered hereby shall supersede any provision in this policy inconsistent therewith."

There can be little question, therefore, that the law of California must govern our construction of this policy.

In the contract of insurance, it is provided as follows:

"Insolvency of Assured

"E. The insolvency or bankruptcy of Assured shall not release the Company from payment of damage sustained or loss occasioned during the life of the policy, and if execution against Assured in an action for damages is returned unsatisfied because of such insolvency or bankruptcy, the injured, or his personal representative in case of death, may maintain an action against the Company for the amount of the judgment obtained not exceeding the limits of the policy."

The appellant construes the foregoing provision as barring an injured person from recovering under the policy unless he can first establish that execution of a judgment against the assured has been returned unsatisfied because of insolvency or bankruptcy. Accepting that construction to be correct, we think the provision is ineffective in California.

The Legislature of California has undertaken to cover the situation here presented. Statutes of California, 1919, c. 367, p. 776.

The text of that statute is as follows: "Section 1. No policy of insurance against loss or damage resulting from accident to, or injury suffered by another person and for which the person insured is liable other than a policy of insurance under the workmen's compensation, insurance and safety act of 1917 or any subsequent act on the same subject, or, against loss or damage to property caused by horses or other draught animals or any vehicle, and for which loss or damage the person insured is liable, shall be issued or delivered to any person in this state by any domestic or foreign insurance company, authorized to do business in this state, unless there shall be contained within such policy a provision that the insolvency or bankruptcy of the person insured shall not release the insurance carrier from the payment of damages for injury sustained or loss occasioned during the life of such policy and stating that in case judgment shall be secured against the insured in an action brought by the injured person or his heirs or personal representatives, in case death resulted from the accident, then an action may be brought against the company, on the policy and subject to its terms and limitations, by such injured person, his heirs or personal representatives as the case may be, to recover on said judgment. Upon any proceeding supplementary to execution, the judgment debtor may be required to exhibit any policy carried by him insuring against the loss or damage for which judgment shall have been obtained."

In Malmgren v. Southwestern Automobile Ins. Co., 201 Cal. 29, 33, 34, 255 P. 512, 513, the Supreme Court of California interpreted the foregoing statute as follows: "It is contended by appellant that its liability could not accrue under the provisions of the policy until an execution issued upon the judgment obtained against the assured, or judgment debtor, was returned unsatisfied by reason of the insolvency or

bankruptcy of said assured. The statute of this state, which is the final word on this issue, does not make the return of the execution unsatisfied a prerequisite to the commencement of an action upon the policy. The statute of the state of New York has such a provision, and appellant had caused to be incorporated in its policy the language of the New York statute verbatim. The substantive law of this state cannot be enlarged, circumvented, defeated, or modified by any provision which the insurer may have elected to place in its contract in derogation of or in conflict therewith. The statute is founded upon principles of public policy, and an anomalous situation would be created if the rights of third parties, for whose protection the law was adopted, could be hindered, delayed, or defeated by the private agreements of two of the parties to a triparty contract. If appellant's contention be sound, then it could, with equal justification, require the question of the assured's bankruptcy to be adjudicated by a competent tribunal before it would be obliged to recognize his insolvency or bankruptcy, or impose other conditions precedent to the injured person's right of action in derogation of express provisions of the law's mandate. We see no merit in the contention. * * * The clause in the statute which provides that an 'action may be brought against the company, on the policy and subject to its terms and limitations, by such injured person,' was not intended to defeat its purpose upon the theory that an action brought 'on the policy' binds the injured person to a repudiation or waiver of the benefits of the statute expressly adopted for his protection, but it clearly has reference to those matters concerning which the insurer and assured could legally contract."

The Malmgren Case, supra, which was decided ten years ago, has been repeatedly followed and approved by the courts of California. See Hynding v. Home Acc. Ins. Co., 214 Cal. 743, 747-752, 7 P.(2d) 999, 85 A.L.R. 13; Bachman v. Independence Indemnity Co., 112 Cal.App. 465, 483, 484, 297 P. 110, 298 P. 57; Panhans v. Associated Indemnity Corporation, 8 Cal.App. (2d) 532, 535, 47 P.(2d) 791.

■ Accordingly, we hold that under the California statute above quoted, as construed by the Supreme Court of the State, it was not necessary, as a prerequisite to suit against the appellant under the policy, for the appellee to prove that the Brink-

mans were bankrupt or insolvent, or that execution on her judgment against the Brinkmans had been returned unsatisfied.

Next, the appellant contends that the appellee is barred from recovery by the fact that she was an employee of the Brinkmans, and suffered injuries in the course of employment in their business. The appellant invokes the following provision of the policy.

"Exclusions

"(8) No insurance is granted by this policy—

    \*    \*    \*    \*    \*    \*

"(b) For bodily injuries or death suffered by any employees of the Assured while engaged in the operation, maintenance or repair of any disclosed motor vehicle or injured in the course of employment in the business of the Assured, or to any person to whom the Assured may be held liable under any Workmen's Compensation Law."

The first question under subdivision (b) is whether or not the appellee was injured in the course of her employment in the business of the assured.

■ Assuming that Mr. Brinkman was an "additional assured" within the meaning of this provision of the policy because he was "legally responsible for the operation thereof," and that Mrs. Brinkman was an "additional assured" because she was legally operating one of the automobiles named in the policy, the question is whether or not appellee's employment was "in the business of the assured" within the meaning of the policy. The only "business of the assured" stated in the policy was that of "packers." The husband, E. M. Brinkman, was engaged in that business, and because of that fact he and his automobile were named in that insurance policy as covered thereby. His wife was covered under the subdivision in regard to the additional assured. The policy provides that the term "assured," whenever used in the policy, shall include the named assured and "any other person, firm or corporation entitled to insurance under the terms, provisions or conditions of this policy." It follows that if the word "assured" is to have this broad application in the clause with reference to employment (section 8, subd. (b), then the "business of the assured" would in the case at bar include the packing business, that being the business of Libby, McNeill & Libby, and also the business of E. M. Brinkman, who was one of their officers and employees, and

would also include the "business" of Mrs. Brinkman. She had no "business" in the sense in which the word is used in the insurance contract, notwithstanding the fact that a wife is often referred to as having the occupation of housewife or homemaker, we think that this is not a "business" within the meaning of the terms of the policy.

While the term "business" has a common and general application to all sorts of enterprises which engage people's attention and energies, we find in this case that the activities of housewife or housemaid had no necessary connection with a business as contemplated by the policy. The term, as here used, implied some connection with trade in the usual sense of buying or selling or some occupation carried on for pecuniary gain, such as indicated in this policy by the use of the description "packer," as the business of the named assured.

That this interpretation is in harmony with the intent of the policy may also be inferred from the fact that in the paragraph where the purposes for which insured automobiles may be used, "family use" is specifically classed as "pleasure."

The policy here involves provisions with reference to the applicability of the insurance such as we had occasion to consider in Kaifer v. Georgia Casualty Co., 67 F. (2d) 309, which are set forth in the note to that opinion, at pages 309, 310. In that case we construed a similar policy provision and held that although the injured person was an employee of the Columbia Pictures Corporation, the named "assured" to whom the policy had been issued, he could recover from the Insurance Company under the policy although he was injured by another employee of the Columbia Pictures Corporation, who was an additional assured covered by the terms of the policy. In so holding we said:

"* * * if it be held that he was engaged in the business or occupation of the named assured (Columbia), he certainly was not either an employee or engaged in the business of the additional assured (Sparks). We concur in this contention.

"If defendant had desired to exclude liability for any injury to any employee of Columbia caused by a fellow employee of Columbia, such exclusion would have been clearly expressed in the policy. Any ambiguity must be resolved against the insurer. In our judgment, however, there there is no ambiguity in the clause; it does not cover the present situation. If there be an unintentional omission, we are powerless to supply the needed words."

A "housewife" is not engaged in a "business" within the meaning of that term as used in the policy.

The appellant argues that "the evidence established that plaintiff was a compensable employee of the Brinkmans under the Workmen's Compensation Law" of California.

Section 8 of that law reads in part as follows:

"(a) The term 'employee' as used in sections 6 to 31, inclusive, of this act shall be construed to mean: Every person in the service of an employer * * * but excluding any person whose employment is both casual and not in the course of the trade, business, profession or occupation of his employer, and also excluding any employee engaged in household domestic service. * * *

"(c) *The term 'casual'* as used in this section shall be taken to refer only to employments where the work contemplated is to be completed in not exceeding ten working days, without regard to the number of men employed, and where the total labor cost of such work is less than one hundred dollars."

Deering's Codes and General Laws of California, 1933 Supp., Act 4749, § 8, pp. 1831, 1832.

While conceding that the appellee was a housemaid, and that the Workmen's Compensation Act "excludes from coverage any employee engaged in household domestic service," the appellant insists "that an employment may be dual in character," and that at the time of the accident the service being performed by the appellee, for which she was being paid a salary, did not fall within the category of "household domestic service." Therefore, it is argued, the appellee's injuries were compensable under the Workmen's Compensation Act and excluded from the coverage of the policy.

The record does not bear out this contention. It is clear from the uncontradicted testimony of Mrs. Brinkman, cited by the appellant itself, that the appellee, on the day in question, was acting as Mrs. Brinkman's housemaid: "* * * she was acting as my maid on the day in question; she had done some laundry work for me at my daughter's and I had taken her home to hang her clothes, and had taken her back

with some tubs to return to my daughter's, and to help my daughter that evening; I was paying her salary at that time and she was my maid; on February 19, 1934, I did not have any business other than that of housewife."

The appellant, however, argues that: "Both the place of the accident and the nature of the service Miss Torres was performing at the time of accident refute a contention that she was performing 'household domestic service.'" It is pointed out that the place of the accident was four or five miles from the "household" of the Brinkmans, and it is contended that the nature of the service "pertained more to trucking or parcel delivery and was not even remotely translatable into 'household domestic service.'"

■ We do not concur, however, in the appellant's assumption that household service must necessarily be performed on the premises occupied by the household. It is the *nature* of the task, and not the *place of performance*, that determines its character. The appellee was returning some tubs that she had used in doing laundry work for her employer, Mrs. Brinkman. In other words, she was doing work incidental to the completion of a household chore.

■ The court below correctly instructed the jury on the law dealing with the appellee's employment: "The Compensation Act excludes from coverage any employee engaged in household domestic service, but I instruct you that an employment may be dual in character. While engaged in household domestic service an employee is excluded from the benefits of the Workmen's Compensation, Insurance and Safety Act of the State of California, but if such employee should perform some other service than household domestic service, and is injured by reason of such other employment, then the Workmen's Compensation Act applies to the injured employee, and the injured employee is entitled to benefits under the Workmen's Compensation, Insurance and Safety Act. So in this case, if you find that at the time of the accident, the plaintiff, Rebecca Torres, was not engaged in household domestic service, but at that time was performing some other service, then she was entitled to receive Workmen's Compensation benefits from Mr. and Mrs. Brinkman, under the Workmen's Compensation Act, and if she was entitled to such Workmen's Compensation

benefits, then she is not entitled to recover in this case from the defendant insurance company."

■ Under the foregoing instruction, which was given verbatim as requested by the appellant, the jury found in favor of the appellee. On appeal, therefore, it must be assumed that the jury found, from all the evidence in the case, that the appellee was engaged in household domestic service. There was ample testimony to support such a finding.

Another attack upon the judgment of the court below is bottomed on the contention that the appellee "was being carried for a consideration in the Brinkman automobile at the time she was injured." In this connection, the appellant points out that the policy contains the following provisions:

"(d) The insurance granted to the additional assured shall not apply in respect of any motor vehicle used to carry persons for a consideration, either actual or implied.

"Exclusions

"(8) No insurance is granted by this policy—* * *

"(f) While any private passenger or commercial motor vehicle covered herein is being used for rental or livery purposes or the carrying of persons for a consideration unless as respects each class of motor vehicles respectively, such use is specified in the Declarations and proper premium therein set forth."

In its reply brief, the appellant seeks to impale the appellee upon the horns of a dilemma by pointing out that the judgment in the state court impliedly established that the appellee was not a guest, by the fact that it awarded damages to her; for, under a statute of California, a guest rider has no right of recovery against the owner or driver of the vehicle. See 2 Deering's General Laws of California, 1931, Act 5128, § 141¾, p. 2520.

In other words, the attempted dilemma is as follows: Either the appellee was a rider for compensation, and was excluded by the terms of the policy, or she was a guest rider, and was barred from recovery by the statute of California.

■ The Act of 1919, supra, however, which authorized a suit by an injured person against a liability insurance carrier, does not contain the limitation that, in or-

der to recover, such injured person must not have been "carried for a consideration." As we have already seen, the Malmgren Case, supra, holds that: "The substantive law of this state cannot be enlarged, circumvented, defeated, or modified by any provision which the insurer may have elected to place in its contract in derogation of or in conflict therewith." Within the spirit of that decision, the appellee herein is a third party "for whose protection the law was adopted," and she cannot "be hindered, delayed, or defeated by the private agreements of two of the parties to a triparty contract."

Finally, the appellant maintains that the suit in the state court was not tried on its merits, and that the evidence both in the state court and in the trial court established "palpable collusion" in obtaining the state judgment.

Appellant is in no position to make the contention of fraud. It did not plead collusion as a defense, but merely confined itself to a denial that the state lawsuit was "tried on its merits." That denial was based upon lack of information or belief.

It is well established, in California and elsewhere, that fraud must be specially pleaded. The appellant freely concedes that this "is the rule in the ordinary case, but the present case is not that sort," because of the appellee's allegation of a trial on the merits and appellant's denial thereof.

Mere denial, however, based upon lack of information or belief, that a trial was had on the merits, is not equivalent to the requisite affirmative allegation of collusion or fraud. There might be other reasons why a trial was not had on the merits, besides reasons based upon collusion or fraud.

Quite aside from all this, however, there is an additional reason why the appellant cannot set up the defense of collusion.

Under the insurance policy, the appellant agreed: "To investigate any claim for such damages and to negotiate settlement thereof as may be deemed expediently by the Company; to defend suits for such damages, even if groundless, in the name and on behalf of the Assured, unless and until the Company shall elect to effect settlement thereof."

When suit was filed against the Brinkmans, their attorney sent a copy of the summons and the complaint to the appellant's general attorney, with the request that the latter "handle the matter with Mr. Brinkman." The appellant's attorney returned the papers to the lawyer for the Brinkmans, stating that "the subject matter of the suit is specifically excluded from coverage under the terms of our policy." The appellant cannot be heard to complain that the suit which it was invited to defend was collusive.

In Lamb v. Belt Casualty Co., 3 Cal. App.(2d) 624, 630, 631, 40 P.(2d) 311, 314, involving a situation almost identical to the one here presented, the court said:

"In determining whether or not the appellant was bound to defend, its denial of liability and refusal to defend, based upon its own investigation of the facts in the case, are to be disregarded. The language of its contract must first be looked to, and next the allegations of the complaints in each action for damages against the insured. The complaints clearly allege damages resulting from an alleged negligent operation of the truck, and the policy in unmistakable language binds the insurer to defend every such action even though the same be groundless. * * *

"The law is well settled that, where one is bound either by law or agreement to protect another from liability, he is bound by the result of a litigation to which such other is a party, provided he had notice of the suit and an opportunity to control and manage it. [Many cases cited.] The judgment recovered in such a case is the mode by which the insured proves to the insurer that the intrinsic character of the accident was such that he was liable for the consequences of it, and the judgment is conclusive evidence that the insured was liable, and to the extent of the amount of the judgment." [Cases cited.]

In the Lamb Case, supra, the Supreme Court of California denied an application to have the cause heard before it, after the opinion of the District Court of Appeal, from which we have just quoted, was handed down.

Involving an identical clause in the policy and a refusal by the insurance company to defend based on the identical ground of noncoverage, the case of American Liability Co. v. Remke, 34 Ohio App. 496, 171 N.E. 372, 373, is authority for the proposition that "having breached its contract," the insurance company cannot be heard to claim even "that it is exempt from liability."

We are not here going so far as the Remke Case. The appellant herein has

been permitted to argue the question of its liability under the terms of the contract of insurance; but it cannot be permitted to raise the question of collusion in the obtaining of the state court judgment.

For the foregoing reasons, the judgment of the court below is affirmed.