**Seumas Iain COWLEY, Individually, and as Representative for other Underwriters Subscribing to Policy No. 523928506, Plaintiffs,**

v.

**TEXAS SNUBBING CONTROL, INC., a Texas Corporation, Gary Knostman, Trustee of the Estate of Bankruptcy of Tomlinson Interests, Inc., a Texas Corporation, and William Waddell Stapleton, Individually, and as Representative for that Class of Claimants in Pending Cause No. 15445, in the Circuit Court of Rankin County, Mississippi and all other Similarly Situated Defendants, Defendants.**

**Civ. A. No. J89–0032(L).**

United States District Court,
S.D. Mississippi,
Jackson Division.

Dec. 8, 1992.

**1440**

John S. Knowles, Brantley & Knowles, Jackson, MS, plaintiffs.

Wayne E. Ferrell, Jr., Ferrell & Hubbard, Jackson, MS, defendants.

### MEMORANDUM OPINION AND ORDER

TOM S. LEE, District Judge.

This cause is before the court on the motion of plaintiff Seumas Iain Cowley, individually and as representative for other Underwriters subscribing to Policy No. 523928506 (Underwriters), to dismiss pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted. That motion has been joined in by defendant Texas Snubbing and third-party defendant Jim Hutchings. Underwriters have also filed a separate motion for summary judgment, and there is pending a motion by defendant William Waddell Stapleton, individually and as representative for that class of claimants in pending Cause No. 15,196 in the Circuit Court of Rankin County, Mississippi and all other similarly situated defendants, to set aside an order of dismissal entered by the court on December 12, 1991 and for order declaring the order of dismissal void ab initio and of no legal effect.[1] These motions are largely

---

1. There was previously pending an application by Stapleton for review of a magistrate judge's order denying additional discovery and a further motion by Stapleton for an order staying or holding in abeyance Underwriters' motion for summary judgment until completion of discovery. This court denied Stapleton's application for review and determined that certain of the

interrelated in terms of the issues which the court is called upon to consider.

## BACKGROUND

This case arises out of a July 15, 1985 above-ground blowout of the E.N. Ross #2 Well located in the Johns Field in Rankin County, Mississippi. Defendant Gary K. Knostman, as trustee of the bankruptcy estate of Tomlinson Interests, Inc.,[2] was the operator of the well. Texas Snubbing Control, Inc. (Texas Snubbing) was the snubbing contractor hired by Knostman that was on-site when the blowout occurred. At the time of the blowout, Texas Snubbing was insured under two policies of insurance issued by Underwriters providing for indemnification against liability incurred by Texas Snubbing, as well as payment of defense costs for covered claims. These included a primary policy with coverage limits of $500,000, and a $2,000,000 umbrella policy, No. 523928506.

The blowout generated numerous lawsuits against Knostman, Texas Snubbing and others, including a number of suits filed in the Circuit Court of Rankin County by residents of Rankin County who lived in the vicinity of the well seeking recovery for bodily injury and property damage alleged to have resulted from the blowout and consequent escape of hydrogen sulfide and other toxic gases. The first wave of landowner suits, consolidated under Master Cause No. 15,002, resulted in a settlement pursuant to which Underwriters paid $750,000 on behalf of its insured, Texas Snubbing. Underwriters subsequently paid an additional $50,000 on behalf of Texas Snubbing in settlement of an action filed by another group of landowners. A third group of suits filed by 281 landowner plaintiffs, including William Waddell Stapleton, were consolidated under Master Cause

Number 15,196, *Stapleton, et al. v. Halliburton, et al.* The plaintiffs in Master Cause Number 15,196, as had the plaintiffs in the earlier suits, named as defendants various entities associated with the well, including Knostman and Texas Snubbing. They alleged personal injuries and property damages resulting from the blowout and demanded damages in excess of $1,000,000,000. That case is currently pending in the state circuit court.

In addition to the landowners' suits, Texas Snubbing filed an action against Knostman in the Circuit Court of Rankin County, seeking indemnification from Knostman based upon an indemnity provision in Texas Snubbing's work order with Knostman, and seeking to recover monies which Texas Snubbing had been or might be required to pay as a result of the blowout. Knostman counterclaimed against Texas Snubbing, demanding in excess of $10,000,000 for indemnification from Texas Snubbing and damages for, *inter alia,* loss of gas, well control and redrilling expenses, evacuation expenses and lost profits.

## PROCEDURAL HISTORY

In consideration of the various claims that third parties had asserted against Texas Snubbing, and in particular the claims by Knostman and the Stapleton plaintiffs, and in view of Texas Snubbing's demand for coverage and defense as provided by Underwriters' policy, Underwriters filed this declaratory judgment action seeking an adjudication that its umbrella policy, which contains exclusions for seepage and pollution, loss of hole, cost of control, removal of debris and punitive damages, provides no coverage for these claims and that consequently, Underwriters have no obligation to indemnify their insured, Texas Snubbing, or to pay any sums to Knostman

issues raised by Underwriters' motions would be addressed first and, depending upon the resolution of those issues, i.e., if the issues were decided in Stapleton's favor, further attention would be given to Stapleton's request that he be permitted to conduct further discovery before responding to the summary judgment motion as it pertained to the remaining issues. Therefore, the only issues presently under consideration by the court are those issues relating to the effect,

as against Stapleton, of the settlement effected between Underwriters and Texas Snubbing.

2. Tomlinson filed for protection under the United States Bankruptcy Code in Texas in June 1984, following which Knostman, as trustee, conducted the business affairs of Tomlinson, including the drilling of the E.N. Ross #2 Well.

**1442**

or the landowner claimants on behalf of Texas Snubbing.[3]

In his original answer to the Underwriters' complaint for declaratory relief, filed May 11, 1989, Stapleton alleged that the policy issued by Underwriters in effect at the time of the accident did in fact provide coverage for his damages and he charged that Underwriters were in any event estopped from denying coverage for his claims since Underwriters had paid substantial sums to other landowners upon claims similar to Stapleton's.[4]

On May 7, 1990, Texas Snubbing answered Underwriters' complaint and, like Stapleton, denied Underwriters' allegations

of noncoverage. Texas Snubbing included with its answer a counterclaim against Underwriters, in which it contended that the policy in effect at the time of the blowout did provide coverage for the claims being made against it by various parties, but that after the blowout, Underwriters, in dereliction of its duties to Texas Snubbing, attempted to "amend" the policy by adding exclusions (or substituting another policy which contained exclusions) which were not in the policy when the blowout occurred. Texas Snubbing demanded not only indemnity for claims it might be required to pay, but also demanded punitive damages for this alleged wrongful and malicious conduct of Underwriters.[5]

3. Underwriters sought by their complaint a judicial determination of the following issues:
a. That the Underwriters have no liability to Texas Snubbing under the Policy for the claims in question because the Policy excludes coverage for loss of hole, cost of control, removal of debris, seepage and pollution of whatsoever nature, underground resources, and punitive damages;
b. That Knostman's counterclaim against Texas Snubbing is excluded by the Policy under the provisions relating to cost of control, loss of hole, seepage and pollution of whatsoever nature, and underground resources; and
c. That the seepage and pollution exclusion contained in the Policy, along with other exclusions contained therein, excludes any liability of the Underwriters to the class of Claimants named herein.

4. By order dated December 20, 1989, a defendant class was certified over Stapleton's objections. The class was ordered to consist of "the claimants in pending cause number 15,196 in the Circuit Court of Rankin County, Mississippi, and all others similarly situated." All references herein to Stapleton are intended to include all those persons comprising the defendant class.

5. It appears from the record that during the course of discovery, it was learned that two policies had actually been issued to Texas Snubbing, one which contained the exclusions relied on by Underwriters and one which contained some but not all of the exclusions. In support of their motion for summary judgment, Underwriters have submitted an affidavit of Michael Judd, a managing director of Devitt (Energy) Ltd., a Lloyd's of London brokerage house, in which Judd undertakes to set forth the events which led to the issuance of two policies. According to Judd, he was approached in 1984 by RISC, a Texas insurance broker, about placing $2.5 million in liability insurance coverage for Texas Snubbing. He obtained a quote for the coverage and conveyed the quote to RISC, but did not receive instructions from RISC to bind the coverage. In May 1985, according to Judd's affidavit, he was again approached by RISC about obtaining insurance coverage for Texas Snubbing. When RISC, which apparently—and according to Judd, erroneously—thought that coverage had been bound earlier, learned that was not the case, RISC inquired whether coverage could be obtained retroactive to October 1984. Judd states that he was able to persuade certain underwriters—a different group of underwriters from those who had originally quoted the coverage in October 1984—to bind the coverage retroactively as requested, subject to a warranty by Texas Snubbing that no known or reported losses had occurred prior to May 17, 1985. Coverage was thus placed in May 1985, but the policy itself was not physically prepared and issued until sometime after the blowout had occurred. The policy which was issued incorporated two endorsements, "Umbrella Oil Exclusions—2nd April 1985" and "Named Peril Seepage and Pollution Endorsement," both of which excluded pollution and seepage coverage in connection with the blowout and both of which, according to Judd, were intended by Underwriters and Texas Snubbing.

Though Stapleton has not formally responded to the coverage aspect of Underwriters' motion for summary judgment, and has instead requested that he be allowed further discovery into the facts surrounding the issuance of the policy or policies prior to responding to the motion as it relates to those issues, his position on this point has been made clear. That is, Stapleton maintains that the policy issued by RISC was the policy in effect at the time of the blowout and that Underwriters fraudulently substituted another policy in order to avoid coverage for the blowout. The court recites the content of Judd's affidavit only for the purpose of placing in perspective the issues presented by the parties' motions.

A settlement was effected between Underwriters and Texas Snubbing in August 1991, under the terms of which Underwriters agreed to pay to Knostman $360,000 on Texas Snubbing's behalf in order to resolve Knostman's claim for damages against Texas Snubbing, this being, according to the terms of the settlement agreement, "the most significant claim[ ] against [Texas Snubbing]."[6] Further, Underwriters agreed to pay to Texas Snubbing the sum of $15,000 in settlement of Texas Snubbing's bad faith claim, and in connection with that aspect of the settlement, those parties agreed as follows:

> Texas Snubbing and its president, Jim Hutchings, hereby ratifies (sic) the acts of its agent Devitt (Energy) Ltd. in negotiating, drafting and physically assembling the aforementioned policy, and release Underwriters from any and all claims it may have or may have in the future under the policy, including, but not limited to, any and all claims arising out of the blowout of the E.N. Ross Well # 2 in Rankin County, Mississippi, and including, but not limited to, the claim of William Waddell Stapleton, and other members of the class of plaintiffs that have been certified as a class in *C.O. Gibb, et al v. Texas Snubbing Control, Inc., et al.,* as described above, any claims of Knostman, including but not limited to any claims asserted by Knostman for indemnity, the claim of Murco Drilling Company, and any claims of any other party for damages, contribution, or indemnity. Texas Snubbing and Jim Hutchings agree to a full and final release and discharge of any liability of Underwriters as set forth above, including a full and final release of any claim it may have against any employees, agents,

attorneys, reinsurers or other insurers of underwriters in connection with the placement or handling of claims under the policy.

In October 1991, shortly after this settlement was reached, Underwriters moved for summary judgment contending that it was entitled to judgment on its claim against Stapleton since his claims were excluded from coverage by the policy in effect at the time of the blowout. Underwriters asserted alternatively that Stapleton was precluded in any event from recovering under the policy since his claims, being derivative in nature, were barred because Texas Snubbing had released all of its claims against the policy.

On December 2, 1991, Stapleton, having learned of the settlement between Texas Snubbing and Underwriters, filed an amended answer and counterclaim against Underwriters, a cross-claim against Texas Snubbing and a third-party complaint against Texas Snubbing's president, Jim Hutchings, asserting, in addition to his claim for recovery against Underwriters under the subject insurance policy, a claim that these parties, by entering into the settlement agreement, had colluded and conspired to defraud Stapleton of his rights to recovery under that policy.[7] Underwriters, joined by Texas Snubbing and Jim Hutchings, has moved to dismiss Stapleton's amended counterclaim against it (Texas Snubbing and Jim Hutchings have requested dismissal of Stapleton's cross-claim and third-party complaint, respectively) for failure to state a claim upon which relief can be granted.

## MOTION TO DISMISS

In his amended counterclaim against Underwriters, Stapleton asserts, *inter alia,*

---

**6.** Texas Snubbing and Knostman entered into a separate settlement agreement.

**7.** On December 12, 1991, at the request of the parties to the settlement, this court entered an order dismissing Texas Snubbing's counterclaim against Underwriters, and dismissing Texas Snubbing from this action. As Stapleton had previously asserted his cross-claim against Texas Snubbing relating to its part in the allegedly unlawful settlement, and as this court's order of dismissal purported to dismiss Texas Snubbing from the case, Stapleton moved to set aside the

court's dismissal order so that he could pursue his cross-claim against his codefendant. The court is of the opinion that Stapleton's request is well taken as the court did err in ordering that Texas Snubbing be dismissed from the case in light of Stapleton's claim against Texas Snubbing. However, while Stapleton should not have been prevented by the court's order from pursuing his claim against Texas Snubbing, as the court concludes *infra,* Stapleton cannot *prevail* on his cross-claim against Texas Snubbing.

what is essentially a claim for a declaratory judgment that he is entitled to coverage under the umbrella policy issued by Underwriters. He avers not only that the policy by its terms provides coverage, but also that Underwriters, having represented that Texas Snubbing had liability coverage for the blowout and having paid out over $1,000,000 to other claimants on Texas Snubbing's behalf, are estopped now from denying coverage for his claims. Stapleton further maintains that Underwriters are guilty of bad faith, and of violating the Texas Deceptive Trade Practices Act, in connection with its denial of his claims, since that denial was based on a fraudulent and deceitful post-accident modification or substitution of the insurance contract designed to avoid coverage. And he claims that by entering into the settlement agreement, Underwriters, together with Texas Snubbing and Jim Hutchings, conspired and colluded to deceive and defraud Stapleton and deprive him of insurance coverage

to which he is entitled. As relief, Stapleton demands payment of the limits under the policy, actual and punitive damages, treble damages, and an order enjoining, or if already consummated, setting aside the settlement agreement.[8]

## Standing

■ Underwriters seek dismissal of Stapleton's counterclaim on the basis that he has no rights under the insurance policy at issue and thus is without standing to complain of the disposition of policy proceeds as between Underwriters and Texas Snubbing. Stapleton is not a named insured under the subject insurance policy, nor is he an additional insured. And in the court's opinion, Stapleton is not a third-party beneficiary of the insurance contract. In short, Stapleton has no present interest in the insurance contract between Underwriters and Texas Snubbing. Consequently, whether Mississippi or Texas law is applied,[9] it is clear that Stapleton has no

---

**8.** The counterclaim against Underwriters contains nine counts. Count 1 essentially seeks a declaratory judgment that coverage under the policy should be afforded to Texas Snubbing for Stapleton's claims. In Count 2, Stapleton demands that Underwriters be ordered to pay actual damages and punitive damages, in addition to the limits of the umbrella policy, based on his contention that Underwriters have acted in bad faith in delaying, failing and refusing to pay Stapleton's claims. More specifically, he contends that Underwriters altered their policies after the blowout so as to exclude coverage, delayed payment of their claims and engaged in a course of conduct designed to reduce available coverage by paying their attorneys to delay the litigation and litigate the claims against Texas Snubbing, thereby reducing the amount of coverage available to him. In Count 3, Stapleton alleges that by these same acts, Underwriters have violated the Texas Deceptive Trade Practices Act, entitling Stapleton to an award of actual, punitive and treble damages.

Count 4 alleges a claim of promissory estoppel, i.e., that Stapleton detrimentally relied on the representation of coverage by Underwriters, which issued policies that were represented to extend coverage to Texas Snubbing for its negligent acts in connection with the blowout. He claims that Underwriters are consequently estopped from claiming the policies issued do not provide coverage to Texas Snubbing and are estopped from asserting that the settlement extinguished Stapleton's rights under the policies. Stapleton demands, in Count 5 of his amended counterclaim, an accounting of all sums paid

under the policies for claims of other parties, as well as attorney's fees, and an accounting of how much insurance coverage remains available to Texas Snubbing.

In Count 6, Stapleton charges that the settlement agreement entered between Underwriters, Texas Snubbing and Jim Hutchings was designed to deceive and defraud him and deprive him of his right to insurance coverage, and that for its acts of bad faith in this regard, Underwriters is liable for actual and punitive damages. Count 7 is essentially the same in substance as Count 6, but contains an additional allegation that the parties to the settlement "conspired" to deceive and defraud Stapleton and "cheat" him of his right to insurance coverage. Count 8 also charges fraud and conspiracy among those parties, but demands as relief that the proposed settlement be enjoined, or if already consummated, then set aside. Finally, Stapleton requests, in Count 9, as in Count 8, that the settlement agreement, which was unlawful and fraudulent and against public policy, be declared null and void and of no legal effect.

**9.** Stapleton insists that either Texas or Mississippi law applies to all of the issues in this case and expends much of his briefing efforts attempting to convince the court that "English law should not be applied to any aspect of this matter." Previously in this case, the court ruled in connection with a discovery dispute that English law governed the limited issue of whether a London broker who negotiated an insurance contract with Lloyd's underwriters in London was an agent of the assured or the underwriters.

standing to pursue a claim for insurance coverage or for bad faith, nor does he have standing to challenge the settlement agreement between Underwriters and Texas Snubbing.

 One who is not a party to a contract of insurance may nevertheless have standing to enforce the contract if the contract was made for that person's benefit. *See Quilter v. Wendland,* 403 S.W.2d 335, 337 (Tex.1966). Legally intended beneficiaries of an insurance contract, for example, may sue to recover on the contract, *see Dairyland County Mut. Ins. Co. v. Childress,* 650 S.W.2d 770, 775–76 (Tex.1983), as may judgment creditors of the insured, who are considered intended third-party beneficiaries of the insured's policy, *see Roland v. Allstate Ins. Co.,* 370 F.2d 289, 291 (5th Cir.1966) (injured party who acquires judgment against tortfeasor may sue tortfeasor's insurer directly to enforce the judgment up to the limits of the policy); *see also Cumis Ins. Soc'y v. Republic Nat'l Bank,* 480 S.W.2d 762, 767 (Tex.Civ. App.—Dallas 1972, writ ref'd, n.r.e.). It is thus manifest under Texas law, as well as Mississippi law, that in the absence of his having secured a judgment against Texas Snubbing, or his having otherwise established Texas Snubbing's liability for his damages, Stapleton has no standing to bring an action for recovery under Texas Snubbing's insurance policy. Under the laws of both states, persons injured by an insured are not third-party beneficiaries of the insurance contract before a judgment is obtained against the insured, in the absence of a statute or contractual provision establishing that third party's status as an intended third-party beneficiary. Injured third parties can be intended third-party beneficiaries of insurance contracts only where contractual or statutory provisions

grant those third parties rights in the insurance agreement. And only those who occupy the status of third-party beneficiaries are permitted a cause of action against the insurer without first having established the insured's liability by judgment or otherwise. *See International Trucking Co. v. Employers Casualty Co.,* No. 04–90–00012–CV (Tex.Civ.App.—San Antonio July 8, 1992) (a third party has no direct action against an insurer on the insurance policy absent a determination of liability on the part of the insured); *Russell v. Hartford Casualty Ins. Co.,* 548 S.W.2d 737 (Tex. Civ.App.—Austin 1977, writ ref'd, n.r.e.) (in absence of statute or express provision of insurance contract, insurer cannot be sued directly in tort suit); *State Farm County Mut. Ins. Co. v. Ollis,* 768 S.W.2d 722, 723 (Tex.1989) (injured third party cannot enforce policy directly against insurer until insured's legal obligation to pay damages has been established by judgment or agreement); *Samford v. Allstate Ins. Co.,* 529 S.W.2d 84 (Tex.Civ.App.—Corpus Christi, 1975, writ ref'd, n.r.e.) (if injured third parties had no direct cause of action against liability insurer, they were not third-party beneficiaries of such action by insured); *Bluth v. Neeson,* 127 Tex. 462, 94 S.W.2d 407 (Tex.1936) (injured third party had no right of action on automobile liability policy, which was personal to insured); *Westmoreland v. Raper,* 511 So.2d 884, 885–86 (Miss.1987) ("benefit to a third party contemplated by insurance policies is contingent upon a judgment being awarded for which the insurance company may or may not be liable under the terms of the agreement."); *Jordan v. State Farm Mut. Auto. Ins. Co.,* 774 F.Supp. 424, 426–27 (S.D.Miss. 1991), *aff'd,* 946 F.2d 1084 (5th Cir.1991) (same); *cf. Dairyland County Mut. Ins. Co. v. Childress,* 650 S.W.2d 770, 775–76

---

The court has never suggested that English law applied to other aspects of this case and the court has not intimated that English law would apply to the issues presently under consideration by the court. In this regard, it is clear that when the court must resort to conflicts rules, it must do so on an issue by issue basis, for the determination of what state's laws will apply will not necessarily be the same for every issue in a given case. *See Boardman v. United*

*Services Auto Ass'n,* 470 So.2d 1024, 1032 (Miss. 1985) (choice of law factors to be evaluated in accordance with their importance with respect to the particular issue). The court need not resolve whether the law of Texas or that of Mississippi would apply to issues concerning the effectiveness of the settlement between Underwriters and Texas Snubbing as against Stapleton since, regardless of which state's law is applied, the result reached would be no different.

(Tex.1983) (third parties injured in automobile accident are within the class of legally intended beneficiaries of insurance policy purchased to satisfy statutory insurance requirements of financial responsibility law); *Conoco, Inc. v. Republic Ins. Co.*, 819 F.2d 120, 124 (5th Cir.1987) (third party lacked standing to bring action on policy where he was prevented from becoming third-party beneficiary by policy provision excluding right of third party to bring action on insurance policy).

■ There is no question but that Stapleton is not a third-party beneficiary of the insurance contract between Underwriters and Texas Snubbing. Stapleton has cited the court to no statute or provision in the insuring agreement granting him rights in the policy prior to securing a judgment or granting him the right to file suit against Underwriters for recovery under the policy prior to his obtaining a judgment against the insured. In other words, the insurance coverage provided by Texas Snubbing's policy was not mandated by law, and the court has not been directed to any provision of the policy which suggests that the insurance contract was secured for the benefit of any third party to the contract. Rather, it appears that the policy of insurance was purchased for Texas Snubbing's own benefit, as well as for the benefit and protection of Tomlinson.[10] Though Stapleton has filed suit against Texas Snubbing in state court alleging that it was negligent, he has not recovered a judgment against Texas Snubbing, and indeed, may never do so. There has been no determination that Texas Snubbing was negligent, or that if it was, any such negligence caused

or contributed to any injuries these persons may have sustained. Under these circumstances, it must be concluded that Stapleton is not a third-party beneficiary of the insurance contract and therefore lacks standing to maintain any claim against the insurance policy.[11] Thus, only if Stapleton were to secure a judgment against Texas Snubbing would he be in a position to maintain a direct action against Underwriters on the insurance contract.

■ It is also clear that whether Mississippi or Texas law is applied, Stapleton has no standing to assert a claim of bad faith against Underwriters for its handling of his claim for benefits. A common law claim of bad faith is predicated on Underwriters' breach of a duty of good faith and fair dealing, and no such duty is owed Stapleton under the policy at issue. Both of these states recognize that an insurance carrier owes a duty under its insurance policy only to its insureds and to intended beneficiaries of the insurance contract. *See Westmoreland*, 511 So.2d at 884; *Arnold v. National County Mut. Fire Ins. Co.*, 725 S.W.2d 165 (Tex.1987); *Chaffin v. Transamerica Ins. Co.*, 731 S.W.2d 728, 731 (Tex.App.—Houston [14th Dist.] 1987, writ ref'd, n.r.e.). Therefore, any interest which Stapleton might have—or here, acquire—in the policy could extend no further than the limits of liability provided under the policy. *See Watson v. Allstate Ins. Co.*, 828 S.W.2d 423 (Tex.App.—Ft. Worth 1991) (insurer owed third-party beneficiary no common-law duty of good faith and fair dealing); *Bowman v. Charter General Agency, Inc.*, 799 S.W.2d 377 (Tex.App.—Corpus Christi 1990, writ denied) (outside worker's compensation area, no Texas court has extended insurer's duty

---

10. It does appear that Tomlinson required that Texas Snubbing procure insurance coverage in order to perform work at the well site, but there is no basis for the court to conclude that Tomlinson did so to protect third parties from Texas Snubbing's negligence. Rather, it appears that this requirement was imposed for Tomlinson's own protection and benefit.

11. Stapleton also lacks standing to challenge Underwriters' denial of policy benefits on the

basis of their having paid out monies to other landowner claimants on behalf of Texas Snubbing under its policy. *Cf. Hunt v. Preferred Risk Mut. Ins. Co.*, 568 So.2d 253 (Miss.1990) (due to state's proscription against direct actions, third party to insurance contract had no standing to raise issues of promissory estoppel in absence of evidence that she acquired insured's claims by assignment or levy).

of good faith and fair dealing to provide remedy to an injured third party having no contractual relationship with insurer); *Caserotti v. State Farm Ins. Co.*, 791 S.W.2d 561, 566 (Tex.App.—Dallas 1990, writ denied) (insurer does not owe duty of good faith and fair dealing to third-party claimant under its insured's policy, even where that third party is also an insured); *Chaffin*, 731 S.W.2d 728 (common law duty of good faith and fair dealing running from insurer to insured does not extend to provide remedy to injured third party; direct action by third party may lie against carrier after injured party has secured judgment against the insured, but insurer's liability is limited to amount of policy); *Samford v. Allstate Ins. Co.*, 529 S.W.2d 84, 87 (Tex.Civ.App.—Corpus Christi 1975, writ ref'd, n.r.e.) (without any cause of action against insurer on policy due to proscription against direct actions, third parties could not complain of negligence or gross negligence on part of insurer for failure to settle within policy limits); *Jordan*, 774 F.Supp. at 426 (Mississippi's proscription against direct actions precluded action by third party for carrier's alleged unreasonable refusal to pay under tortfeasor's insurance policy).

▮ Because he is not a third-party beneficiary of the subject insurance policy, Stapleton is also precluded from proceeding against Underwriters on his claim which is premised on alleged violations of the Texas Deceptive Trade Practices Act.[12] In a case analogous to the one at bar, a Texas appellate court granted summary judgment for the insurer based on its conclusion that plaintiffs had no contractual relationship with their subcontractor's insurer, and were not intended third-party beneficiaries of the insurance contract. In *Chaffin, supra*, plaintiffs sued a subcontractor they had hired for damages caused by negligence in the subcontractor's performance of its duties. The plaintiffs also sued the subcontractor's liability insurer, claiming that Texas law recognized an independent cause of action by a third party against a tortfeasor's insurance carrier arising from the carrier's wrongful denial of coverage. The court held that "[t]he liability policy held by [their subcontractor] was purchased solely for [its] benefit," and consequently, the plaintiffs "derive[d] no legal relationship from the ... insurance contract" between the subcontractor and its insurer. *Id.* at 731. The court explained:

Texas courts are in accord both that an injured party has no direct cause of action against a tortfeasor's insurance carrier, whether or not the insured party is joined; and that the carrier owes a legal duty only to its insured or to an intended beneficiary of the policy. *See, e.g., Aetna Cas. & Sur. Co. v. Marshall*, 724 S.W.2d 770 (Tex.1987) (claimant, an injured worker, sued a workers' compensation carrier under Tex.Ins.Code Ann. art. 21.21; claimant was statutorily intended beneficiary); *Dairyland County Mut. Ins. v. Childress*, 650 S.W.2d 770) (Tex. 1983) (claimants were statutorily intended beneficiaries of auto liability coverage); *Aetna Cas. & Sur. Co. v. Martin Surgical*, 689 S.W.2d 263 (Tex.App.— Houston [1st Dist.] 1985, writ ref'd n.r.e.) (surgical supply company claimant was additional insured); *Becker v. Allstate Ins. Co.*, 678 S.W.2d 561 (Tex.App— Houston 14th Dist.1984, writ ref'd n.r.e.) (tort plaintiff had no standing to sue carrier); *Russell v. Hartford Cas. Ins. Co.*, 548 S.W.2d 737 (Tex.Civ.App.—Aus-

12. Stapleton argues in his brief in opposition to Underwriters' motions that he has standing under Texas law to challenge the settlement agreement under that state's Deceptive Trade Practices Act and under the Texas Insurance Code. A careful review of Stapleton's amended answer, counterclaim, cross-claim and third-party complaint, however, reveals that he has not alleged any cause of action under either the Texas Deceptive Trade Practices Act or under the Texas Insurance Code relating to the settlement agreement. Though Stapleton does not identify which provision of this Act he claims was violated by Underwriters, he does allege in his counterclaim against Underwriters that Underwriters violated the Deceptive Trade Practices Act by their alleged post-blowout alteration of the subject insurance policies. However, the only claims he has charged relating to the settlement are *common law* claims of fraud and conspiracy. For the reasons stated in the text, though, even if he had asserted a statutory claim regarding the settlement agreement, he could not maintain that claim.

tin 1977, writ ref'd n.r.e.) (third party claimants were not permitted to sue insurance carrier directly in tort, *with or without joinder of insured party*); *Samford v. Allstate Ins. Co.*, 529 S.W.2d 84 (Tex.Civ.App.—Corpus Christi 1975, writ ref'd n.r.e.) (insured's judgment creditors were not third party beneficiaries and thus could not complain of carrier's failure to settle).

*Chaffin*, 731 S.W.2d at 731–32. Stapleton argues that irrespective of *Chaffin*, he may maintain his Texas Deceptive Trade Practices Act claim against Underwriters, citing two Texas decisions, *International Trucking Co. v. Employers Casualty Co.*, No. 04–90–000120CV (July 8, 1992), and *Watson v. Allstate Insurance Co.*, 828 S.W.2d 423 (Tex.App.—Ft. Worth 1991). In *International Trucking*, a third party whose vehicle was damaged in an accident with an insured under a policy of automobile liability insurance was contacted after the accident by a representative of Employers, the insurance carrier, and was advised to have the vehicle repaired. Only after the repairs had been completed was the third party informed by the carrier that it would not pay his repair bill since the carrier had determined that its insured was not liable for the collision. Without first having obtained a judgment against the insured, or having otherwise established the insured's liability for the accident, the third party brought suit against Employers alleging that Employers had violated article 21.21 of the Texas Deceptive Trade Practices Act by making numerous misrepresentations in its handling of the repair of his truck. The central issue confronted by the court was whether that third party had standing to bring a statutory cause of action against the insurance carrier for committing an unfair claims settlement practice under the Texas Insurance Code. The court determined that the third party did, in fact, have standing, even though he had not obtained a judgment against the insured, reasoning that his claim was not a suit on the insurance policy but was a statutory cause of action predicated on the carrier's false, misleading or deceptive acts and practices. The court observed that

under Texas law, "[a] non-insured third party has standing to sue for the damages it suffered by relying on the representations of coverage made by an insurance company," *International Trucking*, slip op. at 7 (citing *Hermann Hosp. v. National Standard Ins. Co.*, 776 S.W.2d 249, 252 (Tex.App.—Houston [1st Dist.] 1989)), and concluded that the injured party, who was by law an intended third-party beneficiary of the insured's insurance policy, could recover against the carrier for its misrepresentations under the Texas Deceptive Trade Practices Act.

In *Watson*, another Texas appellate court held that a third-party beneficiary of an automobile liability insurance policy who had not yet obtained a judgment against an insured had standing to bring a cause of action directly against the insurance carrier under the Texas Insurance Code for the carrier's alleged unfair settlement practices. The court found that while the injured third party had no common law cause of action against the carrier since the carrier owed her no common law duty of good faith and fair dealing, she nevertheless could proceed against the insurer on her statutory claim.

The fact that immediately distinguishes this case from *International* and *Watson* is that Stapleton is not a third-party beneficiary of Texas Snubbing's insurance policy. The *International Trucking* court specifically distinguished *Chaffin* on this basis, stating:

The *Chaffin* court first made clear that the plaintiffs were not third party intended beneficiaries of the insurance contract. In doing so it distinguished *Dairyland*, 650 S.W.2d at 775–76, which held that third parties injured in a motor vehicle accident are within the class of legally intended beneficiaries on an insurance policy purchased to satisfy the statutory requirement. The *Chaffin* court held that the plaintiffs may have a claim against [the insurer] limited to the amount of the policy after securing a judgment against [the insured], but that they had no remedy under the Insurance Code, nor under a common law duty of

good faith and fair dealing, because they were not intended beneficiaries of the policy. 731 F.2d [S.W.2d] at 732. ... Of course, under *Dairyland*, persons injured in automobile accidents, such as International, are intended beneficiaries of the other party's insurance policy.

*Chaffin* is distinguishable on the ground that the plaintiffs in that case were not third-party beneficiaries. In addition, the insurer made no misrepresentations directly to the plaintiffs as Employers did in this case. ·

*International Trucking*, slip op. at 8–9. The *Watson* court similarly distinguished *Chaffin* "for the reason that the plaintiff in that case was not a third-party beneficiary of the policy," whereas Watson was such a third-party beneficiary. 828 S.W.2d at 430. As Stapleton is not a third-party beneficiary, neither *Watson* nor *International Trucking* provides support for Stapleton's position that he may properly assert his claim against Underwriters. Instead, *Chaffin* furnishes the applicable rule and dictates the conclusion that Stapleton lacks standing in the case at bar.

 The court further concludes, after thorough consideration of the issue, that since Stapleton has no present interest in the policy itself, he has no standing to challenge the settlement effected between Underwriters and Texas Snubbing. His right to object to the settlement, like his right to proceed against Underwriters on the policy itself, is dependent upon his first obtaining a judgment against Texas Snubbing. In *Alumax Mill Products, Inc. v. Congress Financial Corp.*, 912 F.2d 996, 1001–02 (8th Cir.1990), the court explained that:

> In general, nonsettling defendants lack standing to object to a partial settlement. *See, e.g., Waller v. Financial Corp. of America*, 828 F.2d 579, 582 (9th Cir. 1987); *cf. Armstrong v. Adams*, 869 F.2d 410, 414 (8th Cir.1989) (appellants who had been dismissed as defendants lack standing to object to settlement). 'In ordinary litigation, that is, lawsuits between private parties, courts recognize that settlement of the dispute is solely in the hands of the parties.' *Gardiner v.*

*A.H. Robins Co.*, 747 F.2d 1180, 1189 (8th Cir.1984), *citing United States v. City of Miami*, 614 F.2d 1322, 1330 & n. 16 (5th Cir.1980) ('special situations' which require court approval include proposed class action settlements, proposed shareholder derivative suit settlements, proposed compromise claims in bankruptcy court, and consent decrees in antitrust suits brought by United States), *modified on rehearing en banc*, 664 F.2d 435 (1981). 'However, in multi-party lawsuits, non-settling defendants often seek the court's intervention to invalidate or alter partial settlements.' *Quad/Graphics, Inc. v. Fass*, 724 F.2d 1230, 1232 (7th Cir.1983). 'There is therefore a recognized exception to the general principle barring objections by non-settling defendant to object where it can demonstrate that it will sustain some formal legal prejudice as a result of the settlement.' *Waller v. Financial Corp. of America*, 828 F.2d at 583; see *Quad/Graphics, Inc. v. Fass*, 724 F.2d at 1232; *In re Beef Industry Antitrust Litigation*, 607 F.2d 167, 172 (5th Cir.1979) (citing 3 H. Newberg, Newberg on Class Actions § 5660b, at 564–65 (1977), *cert. denied*, 452 U.S. 905, 101 S.Ct. 3029, 69 L.Ed.2d 405 (1981); *cf. Armstrong v. Adams*, 869 F.2d at 414 ('plain legal prejudice' required to set aside voluntary dismissal under Fed.R.Civ.P. 41(a); drawing analogy between settlement and voluntary dismissal).

. . . . .

Courts have recognized that 'a non-settling defendant has standing to object. to a partial settlement which purports to strip it of a legal claim or cause of action, an action for indemnity or contribution for example.' *Waller v. Financial Corp. of America*, 828 F.2d at 583 (citations omitted); *cf. Franklin v. Kaypro Corp.*, 884 F.2d 1222, 1223 (9th Cir.1989) (nonsettling defendants have standing to appeal), *petition for cert. filed*, 59 U.S.L.W. 3055 (U.S. July 9, 1990) (No. 90–98).

Stapleton, as this court has already concluded, does not at this time have "a legal claim or cause of action," because of the

proscription against direct actions against insurers, but at best has a potential cause of action against Underwriters for recovery on the insurance policy. Contrary to his assertion, it is not the case that Stapleton's rights in the insurance policy have been damaged by the parties' having effected a settlement which is detrimental to his rights; rather, as Stapleton has no present interest in the insurance policy, the settlement at best could affect only potential rights. That is not sufficient to provide Stapleton standing to challenge the settlement agreement.[13]

■ Stapleton argues in opposition to the presently pending motions that Mississippi would recognize his claims as viable to the extent that he is not suing on the insurance contract itself, but rather is suing Underwriters for its independent intentional torts which it committed in issuing the policy and is suing Underwriters, Texas Snubbing and Jim Hutchings for their intentional torts in "conspiring" to enter into a settlement agreement to defraud Stapleton of his potential rights under the insurance policy. In support of his contention that he is entitled to maintain a tort claim against Underwriters for its independent and intentional torts in the claims handling process and against all of the parties for their torts in connection with their entering into the settlement agreement to deprive and defraud Stapleton of his right to recovery under the insurance policy, Stapleton cites *Southern Farm Bureau Casualty Insurance Co. v. Holland*, 469 So.2d 55 (Miss.1984). However, a similar argument was rejected by this court in *Jordan v. State Farm*, in which this court stated:

> The *Holland* case, in which the Mississippi Supreme Court permitted an injured employee to proceed against his employer's workers' compensation carrier for the carrier's intentional conduct in refusing to pay the employee's claim for weekly compensation and medical benefits, is

clearly limited to claims by employees against workers' compensation carriers. The court's conclusion that *Holland* provides no support for plaintiff's position is demonstrated inferentially by the fact that the Mississippi Supreme Court in *Westmoreland*, decided some three years after *Holland*, noted that despite having had on numerous occasions the opportunity to do so, that court had "steadfastly refused" and would continue to refuse to permit a direct action against a liability insurer. *Westmoreland*, 511 So.2d at 884.

*Jordan*, 774 F.Supp. at 426.

■ Stapleton also relies on *Bass v. California Life Insurance Co.*, 581 So.2d 1087 (Miss.1991), as support for his claim that he may properly pursue his claims in this case. In *Bass*, the Mississippi Supreme Court held that an insurance adjuster could be independently liable to a policy insured for gross negligence and intentional torts. Stapleton maintains that it "stands to reason" from the court's holding in *Bass* that an insurance company can be held to account for its gross negligence or intentional tortious conduct which causes harm to a potential beneficiary under an insurance policy. Nothing in *Bass* can reasonably be viewed as supporting Stapleton's position. The *Bass* court held only that an adjuster could be liable to a *policy insured* if, in the performance of his contractual duty to investigate and make a realistic evaluation of the claim, the adjuster committed gross negligence or an intentional tort. *Bass*, 581 So.2d at 1090. The potential liability of an adjuster, according to *Bass*, derives from that adjuster's *duty* to the *insured*, with whom he has a "purely contractual" relationship. *Id*. Underwriters had no relationship with Stapleton, contractual or otherwise, and as observed *supra*, the law is clear in Mississippi, as in Texas, that an insurance company owes no duty to one who is not an insured or a

---

**13.** The court would note in any event that while Stapleton alleges generally that he has been "defrauded" by the settlement agreement entered into by Texas Snubbing, Underwriters and Jim Hutchings, and more generally by representations of coverage, he has not specifically identi-

fied any misrepresentation or fraudulent conduct as required by Rule 8 of the Federal Rules of Civil Procedure, nor has he demonstrated that Underwriters or Texas Snubbing ever represented to him that there was coverage for his damages. In fact, the contrary appears.

third-party beneficiary of the insurance policy. Stapleton's reliance on *Bass* is misplaced.

▆▆▆▆ Stapleton argues that even if he does not otherwise have standing, he must nevertheless be permitted to assert his claims against Underwriters in this action, as those claims are compulsory counterclaims which he has asserted in this action of necessity, upon pain of forever losing the right to assert them. This court cannot accept his contention. Rule 13(a) of the Federal Rules of Civil Procedure governs compulsory counterclaims and provides:

> A pleading shall state as a counterclaim any claim which *at the time of serving the pleading* the pleader has against any opposing party, *if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim* or does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction.... (emphasis supplied).

A leading commentator has also observed that a

> party need not assert a counterclaim that has not matured at the time he serves his pleading. This is derived from the language in the rule limiting its application to claims the pleader has "at the time of serving the pleading." A counterclaim acquired by defendant after he has answered will not be considered compulsory, even if it arises out of the same transaction as does plaintiff's claim....
>
> . . . . .
>
> This exception to the compulsory counterclaim requirement necessarily encompasses a claim that depends upon the outcome of some other lawsuit and thus does not come into existence until the action upon which it is based has terminated.

C. Wright, A. Miller and M. Kane, 6 *Federal Practice and Procedure: Civil 2d*

§ 1411, at 80–82 (1990); *see also Crawford Commercial Constructors v. Marine Indus. Residential Insulation, Inc.*, 437 So.2d 15, 16 (Miss.1983) ("there must be a present, existent actionable title or interest which must be completed at the time the cause of action is filed."). Further, it has been held that the rule pertaining to compulsory counterclaims does not grant a party "a substantial substantive right" which did not otherwise exist. *See Desser, Rau & Hoffman v. Goggin*, 240 F.2d 84, 86 (9th Cir.1957). Underwriters' position on their motions is that neither at the time Stapleton filed his counterclaim, nor for that matter at the present time, did Stapleton have a cognizable claim against Underwriters since, under the well settled law of Mississippi and Texas, injured third parties have no rights against their tortfeasor's insurer unless and until they shall have obtained a judgment against the tortfeasor/insured. There is merit in this position. The claims sought to be asserted in this action by Stapleton are not "compulsory" counterclaims, since his claims depend upon the outcome of his state court litigation in Master Cause No. 15,196. Since neither Mississippi nor Texas permits suits by an injured third party against his tortfeasor's insurance carrier before he has secured a judgment against the tortfeasor/insured, Stapleton's claims are, at this time, premature.[14] The motion of Underwriters, Texas Snubbing and Hutchings to dismiss will, therefore, be granted.

## MOTION FOR SUMMARY JUDGMENT

### Effect of Settlement on Stapleton's Prospect for Recovery

That Stapleton has no standing to assert affirmative claims for relief against Underwriters, Texas Snubbing or Hutchings does not dispose of the issues relating to the disputed settlement agreement, because Underwriters, in addition to claiming that Stapleton lacks standing to object to the

---

**14.** While Rule 13(a) does provide for "permissive" counterclaims, the court is of the opinion that it would not be appropriate to permit Stapleton's counterclaims to be pursued in this action for the reason that Stapleton's claims are at this time merely contingent. And, even were the court persuaded that Stapleton ought be permitted to assert his claims in this action, the court would find dismissal of those claims to be nonetheless in order for the reasons that follow.

settlement, take the further position that Stapleton, even if he were to obtain a judgment against Texas Snubbing, would be barred from recovering under the policy since the release executed by Texas Snubbing extinguished its rights in the policy.[15] Underwriters reason that since Stapleton's rights are derivative of Texas Snubbing's rights, and since Texas Snubbing has released its claim against the policy, then Stapleton would likewise be barred from recovery under the policy. *See Jordan,* 774 F.Supp. at 427 (third party stands in shoes of insured); *Lane v. Anchor Casualty Co.,* 355 S.W.2d 90, 91 (Tex.Civ.App.—Houston [1st Dist.] 1962, no writ). The court is therefore called upon to determine whether the settlement entered between Underwriters, Texas Snubbing and Jim Hutchings is effective to deprive Stapleton of any potential right to policy benefits.

It has been held numerous times that the rights of the injured party in a liability insurance policy applicable to an accident arise "immediately upon the happening of the accident," and "cannot be destroyed by an attempted subsequent cancellation, release, or compromise by the insured and insurer." *Spann v. Commercial Standard Ins. Co.,* 82 F.2d 593 (8th Cir.1936); *see also Wright v. Newman,* 598 F.Supp. 1178 (W.D.Mo.1984), *aff'd,* 767 F.2d 460 (8th Cir.1985) (almost universally accepted that rights of injured third party in respect of a policy of liability insurance irrevocably attach at time of accident and those rights may not be destroyed either by subsequent cancellation of policy or by mutual rescission thereof by insurer and insured); *Capuano v. Kemper Ins. Cos.* 433 A.2d 949 (R.I.1981) (" '[I]t is the general rule that an injured person's rights cannot be defeated by a cancellation or settlement after an accident has occurred. And since a policy cannot be cancelled after an accident, neither can a prior unauthorized or defective

cancellation be ratified after an accident, so as to cut off the rights of the injured person.' ") (quoting 8B Appleman, *Insurance Law and Practice* § 5020 at 515–18); *State Farm Mut. Auto. Ins. Co. v. Kendall,* 104 Ga.App. 481, 122 S.E.2d 139 (1961) (" 'injured party's rights against a liability insurer arise immediately upon the happening of the accident and cannot be destroyed by attempted subsequent cancellation, release or compromise by insured and insurer.' ") (quoting Blashfield, *Cyclopedia of Automobile Law and Practice,* Vol. 6, at 4071, p. 111); *National Surety Corp. v. Sanders,* 53 Ala.App. 405, 301 So.2d 93 (1974) (" 'After a cause of action has accrued to the injured persons against the insured, then the parties to the contract of insurance cannot by any release, agreement or collusion destroy the rights of the injured persons in the indemnity.' ") (quoting *Goldstein v. Bernstein,* 315 Mass. 329, 52 N.E.2d 559, 561 (1943)); J. Appleman, *Insurance Law and Practice* § 5020, at 515–16 (1981) (citing general rule that "an injured person's rights cannot be defeated by a cancellation or settlement after an accident has occurred."). Based on this principle, courts have often permitted an injured third party a right of action against his tortfeasor's liability policy despite a release executed by the tortfeasor/insured in favor of his carrier.

■ This court has found no Mississippi case which has confronted the question of the effect to be given a post-occurrence settlement by the contracting parties as against injured third parties. The Texas courts, however, have had occasion to address the issue. In *Key Life Insurance Company v. Taylor,* 456 S.W.2d 707 (Tex. Civ.App.—Beaumont 1970, writ ref'd, n.r.e.), the court concluded that since a "blanket accident policy" procured by the injured claimant's employer did not indicate

---

**15.** Stapleton suggests that the court would deprive him of "due process of law" and "equal protection under the law" by holding that he lacks standing to assert a claim with reference to the settlement agreement since such a holding would preclude him from asserting a challenge to the declaratory judgment sought by Underwriters. Stapleton is mistaken in this regard. That he does not have standing to assert a claim for affirmative relief in connection with the settlement agreement by no means prevents him from challenging his opponents' claim that the settlement bars him from recovery under the insurance policy at issue. That is, he is certainly free to deny that the settlement agreement is binding against him.

that the policyowner was required to be found liable before benefits would be payable, and since the policy by its terms resembled a group policy which was obviously intended to be for the benefit of third parties, namely, the policyowner's employees, then the injured employee could properly bring an action for recovery under the policy without first having obtained a judgment against the employer. The court rejected a contention by the insurer, similar to that advanced by Underwriters, that the employee/claimant was precluded from recovery on the policy since the policyowner/employer had executed a release in favor of the carrier and in so concluding, explained as follows:

> In holding this contract was for the benefit of plaintiff and that he could properly bring this suit, it necessarily follows that only plaintiff could release his cause of action.... [O]nce the cause of action accrued in favor of a third party beneficiary the Policyowner could [not] do anything to release it. Those cases cited to us by plaintiff are more nearly in point in construing a group policy of insurance providing for penalty and attorney's fees, to mean the injured person was the "holder of the policy" and the one who could recover those benefits.

*Key Life*, 456 S.W.2d at 709. *Key Life* indicates that a settlement and release between an insured and his liability insurer is ineffective as against a third party who establishes that he is an intended third-party beneficiary of the insurance contract prior to his obtaining a judgment against the insured. In that circumstance, the third party may bring an action against the insurer on the policy despite the insured's release of the carrier. The case at bar, however, presents quite a different situation, for here, as this court has concluded, the insurance contract was not for the benefit of Stapleton but rather was for the benefit of Texas Snubbing, so that unless or until Stapleton were to obtain a judgment against Texas Snubbing, Stapleton would have no interest in the policy. This fact also distinguishes other Texas cases touching upon the question of whether settlements between the contracting parties

are to be given binding effect as against the claims of injured third parties.

In *Indemnity Company of America v. Pitts*, 58 S.W.2d 53 (Tex.Comm.App.1933), an automobile liability insurance policy issued by Indemnity Company to one Kakisaki provided that "[i]n the event a judgment against the assured, arising out of an accident covered in this policy, is returned unsatisfied, because of assured's insolvency or bankruptcy, an action may then be maintained against the Company by the party in whose favor judgment was rendered." There, an insurer and its assured agreed to a cancellation of the assured's policy *after a third party had obtained a judgment against the assured for negligence in causing her injuries*, and execution on the judgment had been returned unsatisfied. In an action by the injured third party against the insurer for recovery on the policy, she alleged that the carrier and insured had conspired and colluded to make a pretended cancellation of the policy, pursuant to which the insured had made a pretended release of his claim against his insurer, in fraud of plaintiff's rights and for the purpose of defeating her right to proceed against the insurer. The Texas appeals court accepted the plaintiff's contention that the consensual cancellation of the policy between insurer and assured was not valid and binding as to her, reasoning as follows:

> [A]t the time the agreement for cancellation of the policy was made between Kakisaki and the Indemnity Company, the accident in question had already occurred, and the liability which the Indemnity Company was bound to assume, subject to the terms and conditions of the policy, had already become attached. That Florence Pitts, without her consent, could not be deprived of her rights against the company, by agreement between Kakisaki and the company after her rights had accrued, is perfectly plain. Her rights against the company, subject to the terms and conditions of the policy, accrued the moment the liability of Kakisaki for the personal injuries suffered by her arose. The subsisting obligation of

the company, upon which her rights against the company depended, was of course, originally due to Kakisaki; but even so, that obligation could not, in the absence of a policy provision to that effect, be rescinded, and her dependent rights destroyed, by the agreement to which she was not a party.

*Id.* at 54. *See also Womack v. Allstate Ins. Co.*, 156 Tex. 467, 296 S.W.2d 233 (1956) (citing *Pitts* and holding that post-accident cancellation of policy of automobile liability ineffective against rights of third parties who sued insurer to recover judgment against insured).

In *Pitts*, as contrasted with the present case, at the time suit was filed against the insurer, the injured party had already secured a judgment against the insured and execution on the judgment had been returned unsatisfied. Thus, she had, in fact, satisfied the conditions precedent to her seeking recovery on the insurance contract. Further, the insurance contract itself granted the injured third party the right to proceed against the insurer for recovery of policy benefits in the event she recovered a judgment and was unable to satisfy the judgment due to the insured's insolvency.

▬ In other cases where that right has been afforded to an injured third party, either in the contract itself or a statute of similar import, the courts have consistently viewed that injured third party as having been granted a right in the insurance policy which the contracting parties could not destroy once an accident had occurred. For example, in *Spann v. Commercial Standard Insurance Co.*, 82 F.2d 593 (8th Cir. 1936), the court observed that

[w]here an injured person has a right to sue an insurer conditioned upon an unsatisfied judgment against the insured, the obtaining of the judgment and the unsuccessful efforts to collect it are conditions precedent to his cause of action against the insurer for the purpose of setting in motion the statute of limitations. The rights of the injured party arise, however, immediately upon the happening of the accident. This right, arising from contract, cannot be de-

stroyed by an attempted subsequent cancellation, release, or compromise by the insured and insurer. A contrary rule allowing the insured and insurer to destroy the claim of the injured would render the right of little value.

*Spann,* 82 F.2d at 599. The policy in the case at bar contains no provision granting Stapleton a right to proceed against the policy in the event of securing a judgment against Texas Snubbing, nor does a statute provide him such a right. The cited cases, therefore, cannot be considered controlling on the issue presented. Rather, in the court's view, they stand for the limited proposition that a release by an insured or a consensual cancellation of an insurance policy after an injured third party becomes an intended beneficiary or judgment creditor cannot operate to deprive that third party of his vested right to pursue a claim for recovery under the policy.

In *Finkelberg v. Continental Casualty Co.*, 126 Wash. 543, 219 P. 12 (Wash.1923), the case most factually analogous to the one at bar, the Washington Supreme Court found that a settlement between an insurer and insured after an accident, but before suit was brought against the insured to establish his liability for injuries to a third party, did not bar the claimant's later suit against the insurer on the policy. There, as here, the carrier's liability on the policy was dependent upon its insured's liability having been fixed by final judgment, and, as here, the settlement was effected prior to the injured party's having obtained a judgment against the insured. But significantly, in *Finkelberg*, as contrasted with the present case, the court viewed the injured party under the law of Washington as a third-party beneficiary of the insurance contract from the time the policy was first issued. The court explained,

A third person, beneficially interested in a contract, may maintain an action to recover thereon, even though the identity of the third person may not be known at the time of the execution of the contract.

"The name of the person to be benefited by the contract need not be given, if he is otherwise sufficiently described

or designated. The fact that the particular person who is to benefit from the promise is not known when the promise is made is immaterial. He may be one of a class of persons if the class is sufficiently described or designated. And the fact that the person to whose benefit a promise may inure is uncertain at the time it is made, and that it is dependent on a contingency, will not deprive the person who afterward established his claim to be the beneficiary of the promise of the right to recover upon it."

*Id.* 219 P. at 14 (quoting 13 C.J. 711) (additional citations omitted). The identity of the third person became known only upon the happening of the accident by which that person became injured, and her right to maintain an action against the carrier thus accrued at the time of the accident. By that occurrence, she became a third-party beneficiary, and the insured thereafter "could [not] destroy the rights of appellant by his agreement with [the insurer]." *Id.*

The same result was reached in *Bachman v. Independence Indemnity Co.*, 112 Cal.App. 465, 297 P. 110 (App.1931), where an injured third party secured a judgment against an insured and filed suit to recover on the insured's automobile liability policy. The insurer raised the insured's non-cooperation as a defense to payment. The court held that "after the happening of an accident coming within the coverage provisions of a policy of insurance, ... neither the insurer nor the insured can, by any voluntary act, defeat the statutory right given to the injured person to bring an action on the policy after judgment recovered against the insured without some act or omission on the part of the injured which will relieve the insurer from liability." *Id.*, 297 P. at 118. The court explained,

> In the jurisdictions which do not recognize the right of an injured person to bring an action on the insurance policy to collect the amount of a judgment rendered against the insured for damages suffered at his hands, the policy is regarded and treated as a private contract of indemnity between the insurer and insured in which no other person may become interested. In the jurisdictions recognizing such a right of action the policy is regarded as a contract between the insurer and the insured for their benefit and for the benefit of an unknown third person who becomes known and identified upon being injured by the insured.

*Id.*, 297 P. at 117. The court concluded that California would be governed by the latter rule, based on a portion of California's Financial Responsibility Act which provided that "in case judgment shall be secured against the insured in an action brought by the injured person or his heirs or personal representatives, in case death resulted from the accident, then an action may be brought against the company, on the policy and subject to its terms and limitations, by such injured person." *Id.* The court commented:

> It would seem a strange and useless proceeding on the part of the Legislature to give to the insured the right to sue the insurer if a recovery in such an action could be defeated by the insured without the knowledge or consent of or any act on the part of the injured person.

> It was a contractual relation created by statute which inured to the benefit of any and every person who might be negligently injured by the assured as completely as if such injured person had been specifically named in the policy. * * * *

> It is contended by appellant that its liability could not accrue under the provisions of the policy until an execution issued upon the judgment obtained against the assured, or judgment debtor, was returned unsatisfied by reason of the insolvency or bankruptcy of said assured. The statute of this state, which is the final word on this issue, does not make the return of execution unsatisfied a prerequisite to the commencement of an action upon the policy.

*Id.*, 297 P. at 117 (quoting *Malmgren v. Southwestern Automobile Ins. Co.*, 201 Cal. 29, 255 P. 512, 513 (1927)).[16]

The policy at issue in *Graham v. United States Fidelity and Guaranty Co.*, 308 Pa. 534, 162 A. 902 (1932), contained both a no action clause, proscribing suits against the insurer until the amount of damages was determined by final judgment or agreement, and an insolvency clause, providing an injured party a right of action against the insurer for the amount of her judgment in the event of the insolvency or bankruptcy of the insured. The plaintiff was injured while a passenger in the insured's vehicle and, in accordance with the policy provisions, sued the insured for damages and obtained a judgment against him. When she was unable to satisfy the judgment due to the insured's insolvency, she filed suit against the insurer to recover benefits under the policy. The insured also filed suit against the insurer for the amount of the judgment obtained against him, but that action resulted in what appears to have been an agreed dismissal, which barred subsequent actions by the insured against the insurer. The insurer argued, *inter alia*, that because the suit against it by the insured resulted in an agreement by the insured not to bring suit, which agreement operated to extinguish his cause of action against the carrier on the judgment against him, the right of the plaintiff to sue the company on the same judgment, being derivative of the insured's rights, was likewise terminated. After determining that the injured plaintiff was a third-party beneficiary of the insurance agreement and that indeed, the policy under consideration "expressly gave the injured party, the beneficiary, the right to sue the company," *id.*, 162 A. at 904, the court rejected the insurer's position, stating:

Plaintiff was given a direct right of action against the defendant, which ac-

crued when the execution issued on her judgment against Alquist was returned unsatisfied. She exercised it before Alquist sued [his insurer], and months before his suit was settled without notice to her. Her cause of action is unaffected by the disposition made ... of Alquist's suit.

*Id.* 162 A. at 905. Similarly, in *Zimmerman v. Union Automobile Insurance Co.*, 133 Or. 600, 291 P. 495 (1930), the court found it significant, in determining the effect of a post-accident cancellation of an automobile liability insurance policy, that the policy in question, was "one which undertakes to afford protection against liability and makes as its beneficiaries, in the event of the Assured's insolvency, individuals negligently injured by the latter." *Id.*, 291 P. at 497 (citing *Rose & Son v. Zurich Gen. Acc. & Liability Co.*, 296 Pa. 206, 145 A. 813, 815 (1929), for the proposition that " 'While the claimant is uncertain until an accident happens, that event fixes legal responsibility, as to person, time, and place.' "). The essence of the insurance contract, according to the *Zimmerman* court, was that "if [the insured] became indebted to any one through the negligent operation of his car and, because of insolvency, could not discharge the debt, the company would do so." *Id.*, 291 P. at 498. Ultimately, the court concluded that where "the policy gave a direct primary right against the insurance company to any one injured by the insolvent assured, ... that ... right could not be terminated without the acquiescence of the beneficiary of the promise." *Id.*

The plaintiffs in *Hooker v. American Indemnity Co.*, 12 Cal.App.2d 116, 54 P.2d 1128 (1936), secured a judgment against an insured in a wrongful death action prior to making a claim against the insurer for recovery under the tortfeasor's public liability insurance policy. The insurer contended in that action that there was no

**16.** A contrary result was reached in *Schoenfeld v. New Jersey Fidelity & Plate Glass Ins. Co.*, 203 App.Div. 796, 197 N.Y.S. 606 (1922), because the New York statute, at the time the case was decided, did not explicitly provide the injured party a right of action against the carrier, but

rather provided that a cause of action did not accrue to the injured person until an execution issued upon the judgment against the assured had been returned unsatisfied by reason of insolvency or bankruptcy.

coverage for plaintiffs' damages since prior to the accident it had cancelled the policy under which plaintiffs sought recovery and had issued in its place a policy which did not provide coverage for the accident. According to the carrier, the insured ratified the cancellation after the accident by paying premiums on the new policy. The court, however, rejected the insurer's position, holding that the original policy, which was issued pursuant to California's Financial Responsibility Act, specifically prevented any cancellation of the policy by ratification of a cancellation by the insured. The policy provided, in particular, "This policy shall not be canceled or annulled as respects any loss of damage by any agreement between the company and the assured after the assured has become responsible for such loss or damage, and any such cancellation or annulment shall be void." [17] Thus, the court held, "The rights of the heirs at law ... of the deceased ... had intervened before there was any ratification of the alleged cancellation by the insured. The loss of liability insured against in the insurance policy was for the benefit of these plaintiffs, and when their cause of action accrued, no subsequent act of the insured could deprive them of it." *Id.*, 54 P.2d at 1132.

In *National Surety Corp. v. Sanders*, 53 Ala.App. 405, 301 So.2d 93 (1974), the insurer paid out policy benefits to the insured, and was thereafter confronted with the claim of an injured party who had secured a judgment against the insured. The court rejected the insurer's contention that its obligations under the policy had been fulfilled by payment to the insured, based upon the mandate of a state statute which provided that upon an injured party's recovery of a final judgment against a defendant who was insured against the loss or damage at the time the right of action arose, the judgment creditor was entitled

to have the insurance money provided for in the contract of insurance between the insurer and insured applied to the satisfaction of his judgment. That code section, the court stated, gave the injured party "a vested interest (secondary) by way of hypothecation in the amount due the insured by the insurer of the rendition of the judgment against the insured," *Sanders*, 301 So.2d at 95, and by virtue of that statute, "the insurance policy in force, while for the protection of the insured, [was] also for the benefit and protection of the injured party." *Id.* Thus, the court concluded that after the cause of action had accrued to injured persons against the insured, the parties to the contract of insurance could not by any release, agreement or collusion destroy the rights of the injured persons in the indemnity. *Id.* (quoting *Goldstein v. Bernstein*, 315 Mass. 329, 52 N.E.2d 559, 561 (1943)). "To hold otherwise would be to deny the injured party the protection and benefit of" the state statute, "and would, in effect, render the section virtually useless.... The public would not be adequately protected if the assured and insurer could stipulate so as to defeat the rights of the injured party." *Id.*, 301 So.2d at 96.

Several factors distinguish this case from each of the cases found by the court which have refused to give effect, as against an injured third party, to a post-accident settlement between an insured and his insurer or a consensual post-accident cancellation or rescission between the insured and insurer. A number of those decisions were rendered by courts of states that permit direct actions against liability insurance carriers.[18] Moreover, the majority of the cases were decided against a backdrop of statutorily mandated liability insurance coverage which was held to inure directly to the benefit of members of the public, and were decided on the theory that permitting the insurer and insured to deny

17. In addition, a provision of California's Civil Code provided: "No unauthorized act can be made valid, retroactively, to the prejudice of third persons, without their consent."

18. *See, e.g., Rauch v. American Family Ins. Co.*, 115 Wis.2d 257, 340 N.W.2d 478 (1983) (Wisconsin direct action statute permits third parties to

proceed directly against insurer irrespective of whether liability is presently established or contingent and to become fixed or certain by final judgment against insured, and permits recovery against insurer even though he has given an absolute release to named insured).

the injured party the benefit of the insurance would defeat the purpose of the statute in question.[19] Further, in each of the cases affording the injured party a right to proceed against the policy, the injured third party was a third-party beneficiary as of the time that party sought to recover under the insurance policy.[20] And in many of the cases granting the injured third party a right of recovery, the insurer's denial of coverage was predicated on the insured's violation of policy conditions, such as cooperation and notice provisions, or upon the insured's fraud or misrepresentation.[21]

■■■■ From these authorities, it is apparent that the question whether an insured and insurer may enter into a compromise settlement without the consent of an injured third party after the accident has occurred depends upon the status accorded under applicable state law to that injured third person. If the third party is considered a third-party beneficiary by virtue of the nature and/or terms of the contract itself, by virtue of a statute granting him that status, or by public policy flowing from the nature of the insurance contract, then it is fair to say that in those circumstances, the insured and insurer cannot defeat his right to recover under the policy by post-accident cancellation, rescission or settlement. In other cases, such as where the injured third party is not an intended beneficiary or becomes a policy beneficiary only upon securing a judgment against the insured, then a settlement between the insured and his insurer prior to such time as

---

**19.** *See, e.g., Richard v. Fliflet,* 370 N.W.2d 528 (N.D.1985) (policy was issued pursuant to state's financial responsibility laws, the overriding purpose of which was to protect innocent victims of motor vehicle accidents from financial disaster, and thus by statute could not be cancelled or annulled by any agreement between insurer and insured after occurrence of injury or damage); *Rauch v. American Family Ins. Co.,* 115 Wis.2d 257, 340 N.W.2d 478 (1983) (state's financial responsibility law granted third parties rights in liability insurance contracts which were not dependent on the validity of the contract between the insurer and named insured); *National Surety Corp. v. Sanders,* 53 Ala.App. 405, 301 So.2d 93 (1974) ("public would not be adequately protected if assured and insurer could stipulate so as to defeat the rights of the injured party," where statute obligated insurer to injured third person *to the extent of a judgment recovered by a third person against the assured for a loss covered by the policy*); *Allstate Ins. Co. v. Sullam,* 76 Misc.2d 87, 349 N.Y.S.2d 550 (1973) (state's financial responsibility laws made liability insurance not the concern solely of insured and insurer, but rather inured directly to benefit of third persons injured by insured, such that insurer was estopped to rescind retroactively where rights of injured third party would suffer); *State Farm Mutual Auto. Ins. Co. v. Wall,* 92 N.J.Super. 92, 222 A.2d 282 (1966) (benefit bestowed on innocent third parties emanating from state's financial responsibility law rendered policy noncancellable, notwithstanding fraudulent misrepresentations by insured); *Atlantic Casualty Ins. Co. v. Bingham,* 15 N.J.Super. 328, 83 A.2d 363 (1951) (beneficiaries of state's financial responsibility law and insurance policy provisions required thereby were members of public who may be injured in motor accidents; consequently, policy issued in conformity with Financial Responsibility Act could not be cancelled as against third person injured in accident despite assured's breach of warranty of conditions since "insurer's liability to the assured [was] distinct from its liability to an injured third person."); *Goldstein v. Bernstein,* 315 Mass. 329, 52 N.E.2d 559 (1943) ("Upon the happening of the accident, which was a risk covered by the policy, the plaintiffs acquired a beneficial interest in the proceeds of the policy and the right, if judgments were entered in their favor in the tort actions, to enforce in their own names the satisfaction of their judgments out of the indemnity furnished *to the insured by the company.").*

**20.** *See, e.g., Sanders,* 53 Ala.App. 405, 301 So.2d 93 (1974) (after judgment was obtained by injured third party against insured, that party then filed suit against insurer); *State Farm Mut. Auto. Ins. Co. v. Kendall,* 104 Ga.App. 481, 122 S.E.2d 139 (1961) (settlement was effected between insured and insurer after plaintiff's action against insured was filed and ready for trial); *Olds v. General Accident Fire & Life Assurance Corp.,* 67 Cal.App.2d 812, 155 P.2d 676 (1945) (state statute granted injured third party *right to sue insurer upon obtaining final judgment against assured;* court held that "if at the date the final judgment is secured the policy is in effect and the loss covered, the assured and the company cannot by policy provision in any way limit or place conditions upon the unconditional right of the injured third person to bring his action against the insurance company granted to him by the … statute. Once the right of the injured third person attaches, the assured and the company cannot by policy provision adversely limit or place conditions on the exercise of that right.").

**21.** *See, e.g., Wall,* 92 N.J.Super. 92, 222 A.2d 282 (insured's misrepresentations concerning his driving record).

the third party acquires the status of a policy beneficiary or judgment creditor would not affect the third party's "rights" in the policy as he has no "rights."

 Stapleton, as has already been established, has not acquired the status of a third-party beneficiary of the policy, and may never acquire that status. He is, at this point in time, and was at the time the settlement was effected, only a potential third-party beneficiary. Further, unlike the policies at issue in most of the cited cases, the coverage purchased by Texas Snubbing was not mandated by law. A number of additional factors, however, persuade the court that the settlement between Texas Snubbing and Underwriters, given the circumstances under which it was entered, should be given effect. One such factor presented by this case which was present in none of the cited cases is that at the time the disputed settlement was effected, there was not just one claimant asserting a right of recovery against Texas Snubbing. Rather there were multiple claimants, not all of whose claims could have been satisfied from the insurance benefits provided by Underwriters' policy. Indeed, the claims asserted against Texas Snubbing far exceeded the benefits the policy would have provided, even if it were determined that there was coverage under the policy for the loss.[22]

That brings the court to another very significant distinction between this and many of the cited cases. Specifically, the insurer here does not claim that the policy is void as a result of any act or omission of the insured. Rather, the insurer admits that the policy was in force and effect on the day of the occurrence upon which the various claims are based but claims that the policy, by its terms, expressly excludes coverage for the damages sought by all of those claiming entitlement to policy benefits. Thus, when the settlement was entered, Texas Snubbing, for whose benefit the policy was purchased, was faced not only with the prospect of judgments against it far in excess of the coverage limits provided under Underwriters' umbrella policy, but also with the possibility that it might ultimately be determined that the policy in fact provided *no coverage* for *any* of the claims against it.

Though the court is aware of Stapleton's claim that to permit the parties to defeat his "rights" to the insurance policy proceeds would offend public policy, the court is persuaded that given the circumstances described, public policy does not dictate a contrary result to that reached by the court. At the time of the settlement, Stapleton had no "rights" or beneficial interest in the policy and Texas Snubbing had substantial exposure to liability claims and limited insurance coverage or perhaps, no insurance coverage. Under these circumstances, the court cannot conclude that Texas Snubbing was required to risk that exposure for one who, at the time it entered the settlement, had no interest in the policy. The court concludes, therefore, that the case is governed by the general rule which precludes an injured third party from claiming under the tortfeasor's liability policy to the same extent as the insured.[23] The court thus concludes that the

22. The payment of $800,000 to the other landowner claimants exhausted the primary coverage and $300,000 of the coverage under the umbrella policy, leaving $1,700,000 in available coverage, without deduction for the likely substantial amounts paid for legal representation of Texas Snubbing, amounts which it appears were payable from policy proceeds. Knostman's claim alone was for in excess of $10,000,000 and there was at least one other claim asserted against Texas Snubbing, in addition to that of Stapleton, for which recovery was sought under the policy. The settlement agreement purported to release Underwriters as to that claim, as well as Stapleton's.

23. In *Haines v. Harrison,* 357 Mo. 956, 211 S.W.2d 489 (1948), the death of the insured prevented the injured party from securing judgment against him, as he was required to do as a condition precedent to his recovery under the insured's liability policy. The court held that the injured third party was thus precluded from maintaining an action against the insurer, citing the "general rule ... that if the insured cannot enforce payment then the third person cannot, since the contract is between insurer and insured." The court stated: "[S]ince death abated the liability as to the tort-feasor it also terminated any liability in the insurance contract," and further observed that,

settlement agreement is effective as against Stapleton.

Underwriters' motion for summary judgment will therefore be granted.[24]

## CONCLUSION

Based on the foregoing, it is ordered that the motions of Underwriters, Texas Snubbing and Jim Hutchings to dismiss the claims asserted against them by Stapleton are granted. It is further ordered that Underwriters' motion for summary judgment is granted. A separate judgment will be entered in accordance with Rule 58 of the Federal Rules of Civil Procedure.

ORDERED.

Appellant is in no worse position than he would have been had the tort-feasor not carried insurance, or had he lived and breached certain conditions of the policy.... The fact that appellant has no greater rights than the insured is a sufficient answer. The law places appellant in the shoes of the insured and when that is done no liability exists and appellant's suit must fail.

*See also Brown v. Employer's Reinsurance Corp.,* 206 Conn. 668, 539 A.2d 138, 142 (1988) (where insured could not maintain action against insurer due to his failure to appear at trial of injured party's suit against him, injured third party was likewise precluded from recovery); *Steinbach v. Aetna Casualty & Surety Co.,* 81 A.D.2d 382, 440 N.Y.S.2d 637, 643 (N.Y.App.Div.1981) (insured's failure to timely notify insurer of occurrence discharged insurer's liability to insured and to injured third party).

As the court observed in *Haines,* this court would observe that by virtue of its conclusion that the settlement should be enforced, Stapleton is in no worse position than he would have been in had Texas Snubbing procured no insurance coverage (which, by law, it was not required to do), or had exhausted the limits of its coverage by the payment of other claims (which in view of the magnitude of the claims against its insured was not unlikely).

24. Throughout his brief, Stapleton refers to the settlement as "grossly unfair and fraudulent," and "unconscionable and outrageous," and he submits that the settlement "perpetrated a fraud on the Stapleton claimants, and constituted numerous other intentional torts and negligent acts." He states that the parties, by entering into that settlement agreement "committed independent and intentional torts against Stapleton directly, by attempting to deprive and defraud him of his right of recovery as against Texas Snubbing in the state court litigation." Apparently, though, the basis for Stapleton's conclusory statements that the settlement was "fraudulent," "collusive," and "unfair" is simply that the effect of enforcement of the settlement agreement would deprive him of his right to satisfy from policy proceeds any judgment which he might secure against Texas Snubbing.

The court's conclusion in this case might be different if there were proof that the reason for the parties' entering into the settlement agreement was to deprive Stapleton of any potential for recovery. There is nothing to indicate that this was the case and indeed, the proof tends to suggest that there were a variety of legitimate reasons for the parties' effecting this settlement.